**SISQUOC RANCH CO. et al. v. ROTH, Lt. Col., Infantry, Army of United States.**

No. 11096.

Circuit Court of Appeals, Ninth Circuit.

Jan. 28, 1946.

438

L. K. Vermille, Carl J. Schuck, and Overton, Lyman, Plumb, Prince & Vermille, all of Los Angeles, Cal., for appellant.

Charles H. Carr, U. S. Atty., James M. Carter and Robert E. Wright, Assts. U. S. Attys., and William Strong, Sp. Asst. to U. S. Atty., all of Los Angeles, Cal., for appellee.

Before DENMAN, STEPHENS and BONE, Circuit Judges.

STEPHENS, Circuit Judge.

The Sisquoc Ranch Company, a corporation, made and filed a petition for a writ of habeas corpus in the district court upon its own behalf, and alleged that the petition was also made and filed upon the behalf of and at the request of Homer Sheldon Green, a registrant under the Selective Training and Service Act of 1940, sometimes herein referred to as the Act. 54 Stat. 885, 50 U.S.C.A.Appendix, §§ 301, 302 et seq. It is alleged in the petition that Green is being illegally held by respondent Lt. Col. Max Roth, Army of the United States, and it is prayed that the writ of habeas corpus shall issue and that the court order Green's release from such illegal restraint. Subsequently the petition was amended, but we shall refer to it as amended simply as the petition.

Upon reading the petition, the court issued a show cause order in the usual form, and respondent made his return as follows: That on April 6, 1945, the said Homer Sheldon Green reported at Ft. MacArthur Armed Forces Induction Station pursuant to an Order directing him so to do issued by Local Board No. 144, Santa Barbara County, California, under the provisions of the Selective Training and Service Act and the regulations promulgated pursuant thereto, took the oath for induction into the Army of the United States, and was then and there duly inducted into the Army of the United States and assigned serial number 39743195; that Green was detained only in accordance with the above statement and as a member of the Army of the United States; that he believes Green was inducted "in accordance with the provisions of the Selective Training and Service Act of 1940 and the rules and regulations promulgated pursuant thereto." 54 Stat. 885, 50 U.S.C.A.Appendix, § 301 et seq.; Selective Service Regulations (C.C.H. Manpower Law Service, pp. 16041–16111).

Thereafter, upon the hearing of the motion to amend the original petition as aforesaid, counsel for respondent stated that there was no dispute with reference to the facts as alleged in the petition. Whereupon the court announced that there was no necessity for the taking of evidence at a hear-

ing and stated: "It is the opinion of the Court that the petitioner, the employer of the registrant [Green], has not claimed exemption and was not entitled to notice, and that the contractual relation of the Ranch Company and the registrant, H. S. Green, did not supersede the general welfare of the nation and did not give the Ranch Company, the employer, a standing contended for by the petitioner."

The court then denied the petition and dissolved the order requiring that Green be held within the jurisdiction of the court. Petitioner filed a notice of appeal in the following words: " * * * in its own behalf and on behalf of H. S. Green * * *."

▌▌ It is seen that the court heard the show cause order, accepting as true all, of the factual matters stated in the petition. One of the facts alleged is that the petition was filed on behalf of the registrant and at his request. It is not of great moment whether or not the petitioner, a corporation, has itself any standing to petition the district court for habeas corpus on the behalf of any natural person. As will hereinafter appear, we think it had no standing to so petition in its own behalf. As appears from the stipulation as to facts the habeas corpus petition reached the district court upon the registrant's request and we feel that that is sufficient for its entertainment.[1] The trial court did not make formal findings of fact, probably because under the stipulation formal findings would be, in effect, a restatement of the facts as alleged in the petition, the truth of which had been agreed upon.

Since the facts are agreed upon, we must consider whether or not they show a denial of due process of law.

Green was nineteen or twenty years old when he registered under the Selective Training and Service Act and apparently was qualified in every way for active military duty but was deferred therefrom as an agricultural essential (II-C classification). Some time thereafter, and while so classified and while engaged in the duties for which he was deferred and without previous notice to him or to the Ranch Company, his employer, and without a hearing and without a replacement in his agricultural duties, he was reclassified as I-A, and his induction into the Army followed.

Appellant claims that such action was directly in the face of § 5(k) of the Selective Training and Service Act, commonly known as the Tydings Amendment, 50 U.S.C.A.Appendix, § 305(k). The section reads in part as follows: "Every registrant found by a selective service local board, subject to appeal in accordance with section 10(a) (2) [50 U.S.C.A.Appendix, § 310 (a) (2)], to be necessary to and regularly engaged in an agricultural occupation or endeavor essential to the war effort, shall be deferred from training and service in the land and naval forces so long as he remains so engaged and until such time as a satisfactory replacement can be obtained * *."

Before the passage of the amendment agricultural workers were given deferments of six months or less, but it is seen by the text of the amendment that the time limitation on the deferment was eliminated and instead the registrant was deferred for "so long as he remains so engaged [in agricultural work] and until such time as a satisfactory replacement can be obtained." (There are other conditions to the deferment not material here.)

▌ To understand the amendment it must be read as an integral part of the complete Selective Training and Service Act, 50 U.S.C.A.Appendix, § 301 et seq. and with § 10(a) (2) thereof in mind. The section reads in part [50 U.S.C.A.Appendix, § 310(a) (2)]: "[The President may prescribe rules and regulations] to create and establish a Selective Service System, and shall provide for the classification of registrants * * *. There shall be created one or more local boards [draft boards] * * *. Such local boards, under rules and regulations prescribed by the President, shall have power * * * to hear and determine, subject to the right of appeal to the appeal boards herein authorized all questions or claims with respect to inclusion for, or exemption of deferment from, training and service under this Act

---

[1] " * * * A petition for habeas corpus ought not to be scrutinized with technical nicety * * *," Holiday v. Johnston, 1940, 313 U.S. 342, 350, 550, 61 S.Ct. 1015, 1017, 85 L.Ed. 1392, cited and applied by this court in Crockett v. United States, 9 Cir., 1942, 125 F.2d 547. The writ of habeas corpus is an extraordinary remedy. It is not bound down by the thongs of technical pleading or its swift relief hindered by captious objections or finespun theories of procedure, Jung Woon Kay v. Carr, 9 Cir., 1937, 88 F.2d 297, 298.

of all individuals within the jurisdiction of such local boards. The decisions of such local boards shall be final except where an appeal is authorized and is taken in accordance with such rules and regulations as the President may prescribe * * *."

The amendment, as we have said, must take its place in and as a part of the Act. It does not refer alone to reclassification but covers original classification as well. It is not a special provision of the Act commanding that once a registrant has been deferred for agricultural work the board is without power to take him out of such classification until the job is finished or a substitute is at hand. The power is still in the board to decide whether or not the agricultural work at any given time is essential. Unless it is clear that the board has not considered the problem of essentiality, it is subject to no court review of any kind. Thus it is seen that the procedure for reclassification is but the repetition of the procedure in the original classification. The problems for the board are the same in either case.

 The original classification is not made after a hearing, either upon or without notice, but is fixed primarily from information contained in the registrant's returned questionnaire and the relative needs in the various services essential to the war effort. The presumption, of course, is that the board, when it has acted, has done its duty and has correctly fixed the classification. No hearing is provided for except "* * * to hear and determine * * * all questions or claims with respect to inclusion for, or exemption or deferment from, training and service * * *." 50 U.S.C.A.Appendix, § 310 (a) (2). That is, hearings are held after classification and upon protest or request, as is accurately put in Selective Service Regulations § 625.1(a): "Every registrant, after his classification * * * shall have an opportunity to appear in person before the member or members of the local board * * * if he files a written request therefor within 10 days

after * * * Notice of Classification * * *. (b) No person other than the registrant may request an opportunity to appear before the local board."

 From this analysis we regard it as plain that after, as well as before, the Tydings Amendment the local board possessed the jurisdiction and power to reclassify Green and that it is plain that there is no support in law for the argument that once a classification is made deferring a registrant for agricultural work that the board has lost its power to re-classify him until after a noticed hearing. After notice of the reclassification the registrant had the right to ask for and be granted the hearing provided for by § 10 of the Selective Training and Service Act, 50 U.S.C.A. Appendix § 310, and Selective Service Regulations § 625.1(a). Green, the registrant, however, did not request a hearing nor did he protest his reclassification in any manner except by the request that the Ranch Company file the instant habeas corpus petition as hereinbefore stated. Therefore, there is nothing at all in support of the allegation in the petition that Green individually has suffered any lack of due process in the proceedings which led to his induction into the United States Army. Certainly, also, Green did not pursue his administrative remedies to their end. Falbo v. United States, 1944, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305; Billings v. Truesdell, 1944, 321 U.S. 542, 64 S.Ct. 737, 88 L.Ed. 427.

 Earlier in this opinion we expressed the bare opinion that petitioner Ranch Company, as to itself, is without standing to maintain this proceeding. We think the Ranch Company is entirely without the nature of interest which would entitle it to such standing or entitle it to prevail in it to petition for the issuance of the writ.

 Essentially, the writ of habeas corpus ad subjiciendum here sought is a personal one, and is in no wise concerned with the property rights of anybody.[2] It is

---

2 The several varieties of the ancient writ of habeas corpus are catalogued, described and authenticated in 25 Am.Jur. p. 145 § 4. See McNally v. Hill, 293 U. S. 131, 55 S.Ct. 24, 79 L.Ed. 238, wherein the history of the writ of habeas corpus in the United States is outlined by Mr. Justice Stone, now Chief Justice, and the following statement is made (293 U.S. at page 136, 55 S.Ct. at page 26, 79 L.Ed. 238): "The purpose of the proceeding defined by the statute was to inquire into the legality of the detention, and the only judicial relief authorized was the discharge of the prisoner or his admission to bail, and that only if his detention were found to be unlawful. In this, the statute conformed to the traditional form of

the limited but nonetheless the important role of this writ to inquire into the reason for any limitation of a human being's freedom and to cast such limitations aside if they are found to be without lawful support.

The petition here is solely a recital of hardship to the Ranch Company with the prayer, in effect, that Green be ordered back into its service.

Whether or not the board was bound to consider the Ranch Company's plea that Green should be reclassified back into II-C, the fact is that it did receive such plea with such evidence as the Ranch Company desired to submit in writing. The board did honor the Ranch Company's petition on appeal and the appeal board denied the appeal. At any time before induction of Green the board could have changed his classification, but it did not do it, and the appeal board also declined to do so.

■ In justice to the Ranch Company we think it right to say that it has acted in perfect good faith and has put up a strong case as to its needs. But it does not follow that the board was capricious or arbitrary in its actions. The board had a duty to the country to perform and it was not required to consider only evidence sent to it by the Ranch Company. As this court said in Sullivan v. Swatzka, 9 Cir., 1945, 148 F.2d 965, 966: "* * * Petitioner's position appears to be that claim for agricul-

tural deferment must be granted unless the local board is presented with evidence contradictory to that offered by the registrant. But the boards have no facilities for assembling evidence. The board members are non-paid citizens of the community, and one claiming deferment must establish to the satisfaction of his board that he is entitled to it. The Appeal Boards are granted broad general powers by the regulations.[3]

" [3] Selective Service Regulations: 627.24 Review by board of appeal.

"(a) * * *

"(b) In reviewing the appeal, the appeal board shall not receive or consider any information which is not contained in the record received from the local board except (1) the advisory recommendation from the Department of Justice under section 627.25 and (2) general information concerning economic, industrial, and social conditions." [3]

We hold that the Ranch Company cannot plead its sufferings as the basis for its claim that Green is under illegal restraint, and that neither the district court nor this court could order Green released from the Army of the United States because he did not follow his administrative remedies before induction. Notwithstanding all of this, no lack of due process can be spelled out of the stipulated facts.

Affirmed.

---

the writ, which put in issue only the disposition of the custody of the prisoner according to law. There is no warrant in either the statute or the writ for its use to invoke judicial determination of questions which could not affect the lawfulness of the custody and detention, and no suggestion of such a use has been found in the commentaries on the English common law."

[3] Appellant relies upon United States ex rel. Levy v. Cain, 2 Cir., 1945, 149 F. 2d 338, 341, as supporting its contentions. In the first place the cited case is not one prosecuted by a natural person or by a corporate person upon his or its interest in the services of a registrant as here. The cited case is prosecuted by relation

of the United States Government upon its interests in the due administration of the Selective Training and Service Act. The Sisquoc Ranch Company is not here on any such relation or with the standing that such relation would bring to it.

In the next place the subject matter was a statutory right of the registrant to an exemption from the act, which he had a right to have determined by the board. Deferences are discretionary privileges to individuals or directives in the interests of the war effort. The board, however, submitted the matter to a private panel of citizens and received and gave weight to the report of such panel. The difference in the cases is obvious.