**UNITED STATES of America**

v.

**Doyle Julian JONES.**

**Crim. No. 20764.**

United States District Court
E. D. South Carolina,
Columbia Division.

June 27, 1956.

Irvine F. Belser, Asst. U. S. Atty., Columbia, S. C., for plaintiff.

Sidney D. Duncan, Muller O. J. Kreps, III, Columbia, S. C., for defendant.

TIMMERMAN, Chief Judge.

The defendant, charged with violation of Section 462, 50 U.S.C.A.Appendix, in having wilfully refused to be inducted into the military service of the United States pursuant to the order of his local Selective Service board, waived trial by jury and consented to trial by the Court without the aid of a jury. The case was tried before me on June 8th. Motions by the defendant for a judgment of acquittal, made at the conclusion of the Government's case-in-chief and again at the conclusion of all the evidence, were denied.

After careful consideration of the defendant's Selective Service file, the testimony in the case, and the oral and written arguments of counsel, I find the defendant guilty as charged.

The conclusion of the defendant's guilt is based in the main upon the findings of fact and conclusions of the law stated hereinbelow.

The defendant registered with Selective Service System Local Board No. 39, Pickens County, Pickens, South Carolina, on August 1, 1949, giving Easley, South Carolina, as his place of residence and July 29, 1931 as his date of birth. The following year he completed and returned to the local board his Classification Questionnaire. In the Questionnaire he made no claim of being a conscientious objector or a minister, leaving blank the sections of the Questionnaire relating to these matters (Series XIV and VI respectively). He expressed no opinion as to what his classification should be, leaving this line of the Questionnaire blank also. After consideration of the Questionnaire his local board on September 16, 1950 classified him as III–A and then on October 19, 1951, after a change in the Selective Service System regulations, reclassified him as I–A. The defendant did not appeal or request a personal appearance within the time allowed after either of these classifications.

On November 8, 1951 the defendant was ordered to report for physical examination on November 30, 1951. On No-

vember 29, the day before the scheduled examination, the defendant wrote to the local board requesting a personal appearance. Following his physical examination, at which he was found acceptable for military service, the defendant made a personal appearance before the local board on December 7, 1951. At this time he requested and received a SSS Form 150, Special Form for Conscientious Objector. So far as the record of the case reveals, this was the first mention by the defendant of a claim for exemption as a conscientious objector. On December 12, 1951 the local board notified him that he had been found physically qualified and ordered him to report for induction on January 8, 1952. On the same day the board received the defendant's completed Conscientious Objector Form 150. At the defendant's request the board rescinded the induction order, and granted the defendant a second personal appearance on January 3, 1952 although the 10-day period since the mailing of his last classification notice had long since expired. On January 23, 1952, after consideration of the defendant's file and the statements and materials submitted by him, the local board reconsidered his classification and voted to continue him in I–A. The defendant was duly notified of this classification and allowed until February 3, 1952 to take any desired appeal. The defendant on February 1, 1952 submitted an appeal (received by the local board on February 4) and certain additional material concerning his conscientious objector claim. The District Appeal Board, preliminarily on February 13, 1952, and again on March 25, 1953 after a Department of Justice hearing and recommendation on the defendant's claim, determined that the defendant was not entitled to the exemption claimed and voted unanimously to continue his I–A classification.

The defendant was thereafter duly notified of his classification and ordered to report for induction on April 24, 1953. The defendant reported as ordered but refused to submit to induction. In due course thereafter he was indicted in this court (Criminal Action No. 19,972) for violation of Section 462, Title 50 U.S. C.A.Appendix.

When his case was called for trial February 16, 1954, the defendant waived trial by jury and declined the services of counsel previously appointed for him by the Court. During the course of arguments on the Government's motion to quash subpoenaes *duces tecum* served by defendant on the United States Attorney, the Government hearing officer, and the Federal Bureau of Investigation, the defendant challenged the sufficiency of the summary of any adverse evidence in the FBI reports given him by the hearing officer at the time of his Department of Justice hearing. The case not being reached for trial at that term of court because of prior jury trials, the United States Attorney, for the stated reasons that the effect of the recent decision of the United States Supreme Court in United States v. Nugent, 1953, 346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417, which had for the first time laid down the requirement that a registrant be given a "fair résumé" of the adverse evidence in the investigative reports at the time of a Department of Justice conscientious objector hearing, was not then fully understood, and he wished to give the defendant the benefit of every procedural right to which he was entitled, and to eliminate any doubt as to the adequacy of the hearing afforded him, arranged for the defendant to be given a second Department of Justice hearing on his claim of conscientious objection. After a supplementary FBI investigation, the new hearing was conducted by a different hearing officer in Ohio, to which the defendant had in the meantime moved. After the resulting Department of Justice report and recommendation, the appeal board again denied the defendant's claim for exemption and on July 27, 1955 continued his I–A classification.

After defendant's requests for personal appearances before the local board and the appeal board were turned down, the defendant was ordered by the local board to report for induction on Septem-

ber 28, 1955. Again he reported as ordered but on September 29 refused to take the symbolic step forward signifying entry into the armed forces. He was accordingly reindicted on October 24, 1955 for the new violation. The present prosecution is based upon the new indictment alleging the violation of September 29, 1955, the original indictment having been nol prossed by the Government in the meantime.

In determining whether or not defendant is guilty of the offense herein alleged, there appear to me to be two principal questions involved: one, whether or not there is any basis in fact in the defendant's Selective Service file to sustain the I–A classification given him by the Selective Service System, and two, whether or not his processing by the Selective Service System was in accordance with the requirements of due process as set forth in the Selective Service statute and regulations and the decisions thereunder. I shall treat these questions briefly in turn.

 It is too well established to admit of any question here that in a criminal prosecution of this sort the courts are not to weigh the evidence to determine whether a classification given a registrant by the Selective Service System is justified and that the decision of the applicable Selective Service board made in conformity with the regulations is final even though it may be erroneous. If there is any basis in fact to support the classification determined by the Selective Service System, the Court will not reconsider the evidence in the file to determine whether or not it would reach the same decision. Estep v. United States, 327 U.S. 114, 122, 66 S.Ct. 423, 427, 90 L.Ed. 567; Cox v. United States, 332 U.S. 442, 452, 68 S.Ct. 115, 92 L.Ed. 59; Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132; Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428; White v. United States, 9 Cir., 1954, 215 F.2d 782, certiorari denied 348 U.S. 970, 75 S.Ct. 528, 99 L.Ed. 755; Goff v. United States, 4 Cir., 1943, 135 F.2d 610, 612; United States v. Dal Santo, 7 Cir., 1953, 205 F.2d 429, certiorari denied 346 U.S. 858, 74 S.Ct. 71, 98 L.Ed. 371.

What the term "basis in fact" means in connection with conscientious objector cases has recently been set forth in detail in Witmer v. United States, 348 U.S. 375, 381–382, 75 S.Ct. 392, 396, 99 L.Ed. 428, 434. In the opinion in that case the Supreme Court states that:

"* * * the ultimate question in conscientious objector cases is the sincerity of the registrant in objecting, on religious grounds, to participation in war in any form. In these cases, objective facts are relevant only insofar as they help in determining the sincerity of the registrant in his claimed belief, purely a subjective question. In conscientious objector cases, therefore, *any fact which casts doubt on the veracity of the registrant is relevant.* It is 'affirmative evidence * * * that a registrant has not painted a complete or accurate picture * * *.' Dickinson v. United States, supra, 346 U.S. at page 396, 74 S.Ct. at page 157. In short, the nature of a registrant's prima facie case determines the type of evidence needed to rebut his claim. If the issue is the nature of his activities, as in Dickinson, the evidence providing 'basis in fact' must tend to show that his activities are other than as stated. If, as here, the issue is the registrant's sincerity and good faith belief, then there must be some inference of insincerity or bad faith."

 Reading the record of this case with these principles in mind, I find ample basis in fact to sustain the I–A classification given the defendant by the Selective Service boards.

First in point of time, though not necessarily in importance, is the fact that the defendant made no mention of being a conscientious objector until December 7, 1951—some two and a half years after his original registration and after he had twice been given classifications other than I–O (without his having appealed

from either classification or requested a personal appearance within the time allowed) and after he had been ordered to report for physical examination—in other words, until it became apparent to him that his induction was becoming imminent. The lateness of his claim of conscientious objection is made particularly significant by the fact that he afterwards stated in the Form 150, Special Form of Conscientious Objectors, which he submitted to the local board that he had become a "good will member" of the Jehovah's Witnesses sect in 1949 and that he had thereafter been in "constant contact with the Kingdom Proclamation of God's New World". Delay by a registrant in making a claim of conscientious objection is a material factor for consideration by the Selective Service boards in evaluating the sincerity and good faith of the registrant's claim. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428; Eagles v. United States ex rel. Horowitz, 329 U.S. 317, 322, 67 S.Ct. 320, 91 L.Ed. 318; White v. United States, 9 Cir., 1954, 215 F.2d 782, certiorari denied 348 U.S. 970, 75 S.Ct. 528, 99 L.Ed. 755; United States v. Schoebel, 7 Cir., 1953, 201 F.2d 31, 32; Gaston v. United States, 4 Cir., 1955, 222 F.2d 818.

■ It also appears from the record that the defendant was employed for approximately a year at the Savannah River Plant of the United States Atomic Energy Commission, commonly known locally as the "H-Bomb Plant". I find that the defendant's willingness to work at an installation so closely connected with the national security activities of the United States as the Savannah River Plant of the Atomic Energy Commission is peculiarly inconsistent with a claim of conscientious objection to participation in war in any form. White v. United States, 9 Cir., 1954, 215 F.2d 782, 786, certiorari denied 348 U.S. 970, 75 S.Ct. 528, 99 L.Ed. 755. This fact in itself to me appears sufficient to justify denial of the defendant's claim. This is particularly true in view of the fact that the defendant sought and obtained employment at the Savannah River Plant only some three or four months after he first made his claim of conscientious objection.

It is also worthy of note in this connection that at the time of his first hearing before a Department of Justice hearing officer the registrant failed to inform the hearing officer of his employment at the Savannah River Plant and that the hearing officer felt that this omission was evidence of bad faith on the part of the registrant. While I find more than sufficient basis in fact elsewhere in the file to support the Selective Service boards' denial of the defendant's claim, I am inclined to agree with the hearing officer on this point.

I also find support for the denial of the defendant's claim of conscientious objection in the fact that the defendant was granted two personal appearances before the local board and given an opportunity to present any information he desired to in support of his claim. After hearing his statement of his case and observing him in person, however, the board both times concluded that he was not sincere in his profession of conscientious objection to participation in war and rejected his claim for exemption. As stated by the Ninth Circuit Court of Appeals in White v. United States, 1954, 215 F.2d 782, 784, certiorari denied 348 U.S. 970, 75 S.Ct. 528,

"The local board initially, and the appeal board subsequently, were called upon to evaluate a mental attitude and a belief. It is plain that when such matters are to be determined and passed upon, the attitude and demeanor of the person in question is likely to give the best clue as to the degree of conscientiousness and sincerity of the registrant, and as to the extent and quality of his beliefs. The local board, before whom the registrant appeared, had an opportunity surpassing that available to us or to the appeal board itself to determine and judge as to these matters. * * * We think that it cannot be adjudged that the local board with its opportunity to

size up the registrant upon his personal appearance, which could evaluate his sincerity as it observed his manner and demeanor * * * can be said to have acted without basis in fact * * *."

See also Gaston v. United States, 4 Cir., 1955, 222 F.2d 818.

Also in the same category is the fact that the defendant was granted two hearings before different Government hearing officers and failed to convince either hearing officer of the sincerity and good faith of his claim. This fact in itself appears to me to be of material significance in any later evaluation of the defendant's sincerity and good faith. Gaston v. United States, supra. In this connection it also appears from the record that the defendant has twice been classified I–A by his local board. His case has been considered by the District Appeal Board three times. He has had two personal appearances before the local board and two hearings before Government hearing officers. His file has twice been reviewed by the Department of Justice and at least once by the national headquarters of the Selective Service System. On each occasion each of these agencies has unanimously rejected the defendant's claim. The defendant has been unable to convince a single person or any of the boards or agencies before which he has appeared and which have reviewed his case that he is entitled to the exemption which he claims. I would be rash indeed if in the face of such previous unanimity of opinion I should find that there is no basis in fact to sustain these agencies' denial of the defendant's claim. Gaston v. United States, supra.

■ It also appears from the record that at the defendant's second Department of Justice hearing he stated that he believes in a police force and in self defense to the extent that the Government allows and that he could take the life of an attacker to save his own life or his wife's or the life of other Jehovah's Witnesses but no one else. I consider such beliefs inconsistent and incompatible with a genuine and sincere opposition to participation in war in any form. Such beliefs indicate to me that the registrant is not actually and conscientiously opposed to participation in war, as contemplated by Congress in granting an exemption on this basis, but that he merely arrogates unto himself the right to decide when and for what purpose he will fight. I cannot believe that Congress intended to grant exemptions to persons with such partial and specialized beliefs.

■■ Most significant of all in determining the genuineness of the defendant's objection to participation in war in any form is the finding by the second hearing officer before whom the defendant appeared that he (the hearing officer) "was anything but impressed by the sincerity of the registrant and the witnesses who testified in the registrant's behalf". The hearing officer was of the opinion "that the registrant and his witnesses would testify in any manner that would sustain the registrant's claim as a conscientious objector". *This is affirmative evidence of the most direct kind possible.* See the Supreme Court's comment in Witmer v. United States, 348 U.S. 375, 378, 382, 75 S.Ct. 392, 396, 99 L.Ed. 428, 434: *"Since Witmer stated his beliefs with apparent sincerity, and since we find no indication anywhere in the record that his demeanor appeared shifty or evasive or that his appearance was one of unreliability, we must examine the objective facts before the Appeal Board to see whether they cast doubt on the sincerity of his claim."* This clearly implies that if there is any lack of apparent sincerity or any appearance of unreliability or shiftiness or evasiveness in a registrant's demeanor the Selective Service agencies need look no further. I consider that the hearing officer's finding on this point brings this case squarely within the test laid down by the Supreme Court in the Witmer case and that his finding on that point is in itself a sufficient basis to sustain denial

of the defendant's claim, even aside from all of the other bases in fact described above.

We come now to the question of whether or not the registrant's case was processed by the Selective Service System and associated agencies in accordance with all of the requirements of the Selective Service law, regulations, and authorities, so that the final induction order of his local board was a lawful one. In his motions for a judgment of acquittal the defendant has attacked the legality and propriety of his processing in a number of particulars. I find no merit in any of the points which he has raised, however, and in my opinion the registrant has been accorded every procedural right to which due process and the Selective Service law entitled him. On the contrary I am of the opinion that the treatment which the defendant has received at the hands of the Selective Service System and the Department of Justice has been more than liberal and that the various agencies and boards which have acted upon his case have leaned over backward to insure his being afforded every possible right and privilege.

As well as I can understand the appellant's first ground in his motions for a judgment of acquittal, he contends that since the record before the appeal board after his second Department of Justice hearing presumably included information developed during the first hearing and the FBI investigation made in connection therewith, he was deprived of an opportunity to refute the adverse evidence, if any, contained in the original investigative report and Department of Justice advisory report and recommendation. This contention appears to me to be totally without weight. In the first place, as stated by the United States Attorney during the trial of this case, the second hearing was afforded the registrant for the very purpose of insuring that the defendant be given a fair résumé of any adverse evidence in the FBI report, and in the absence of any more specific allegations by the defendant on this point than appear in the record and testimony in this case, it must be assumed that every requirement of the law in this respect was scrupulously observed by the hearing officer at the time of the second hearing. At the time of his first hearing before a Government hearing officer, some time between February 13, 1952 and March 9, 1953 (the exact date does not appear in the record), the Nugent case had either not yet been decided or only recently decided. Until the decision in that case there had been no requirement in either the Selective Service law or regulations that a registrant be given *any* summary of the adverse evidence, if any, in the Department of Justice's investigative reports, and the United States Attorney out of what now may well appear to be an excess of caution and out of a desire to make sure that the Supreme Court's new requirement in this respect was fully complied with, sent the defendant's Selective Service file back for a second hearing in line with the Department of Justice's revised procedure in regard to such hearings. The defendant makes no contention now that the written résumé of the investigative report required under the revised procedure was not in fact provided to him by the second hearing officer. Indeed the defendant introduced in evidence a copy of the notice of hearing and the written résumé of the FBI report which the hearing officer in fact mailed to him. It is obvious from an examination of this résumé that it incorporates the information obtained in both the original FBI investigation and the later supplementary investigation and that consequently all of the facts developed during the investigation were made known to the defendant at the time of his second hearing. This being so, he had ample opportunity to refute them both during the said hearing and also in the written reply which he was allowed to make to the appeal board after receipt of a copy of the Department's advisory report and recommendation as required by the Supreme Court in its decision in Gonzales v. United States, 348 U.S. 407, 418, 75 S.Ct. 409, 99 L.Ed. 467.

The defendant's argument in connection with this point that the Selective Service System and the Department of Justice have gotten the first hearing and the second hearing so mixed up together that it was impossible for the appeal board to render a fair decision in the case appears to me to be frivolous. No attack was made by the defendant upon the sufficiency of the first hearing in any particular except his contention that a fair résumé of the adverse evidence in the FBI report was not provided him. Since this defect—if any such defect in fact ever existed—was unquestionably cured by the provision to the defendant of a fair résumé of the complete FBI report at the time of his second hearing, the defendant cannot possibly have been prejudiced by any such omission at the time of the first hearing. I do not see how the defendant can conscientiously complain that he was granted two hearings instead of one.

The defendant's second challenge to the sufficiency of the processing of his case appears to be that at the time of his appearance at the induction station on September 28–29, 1955 the original indictment for his failure to submit to induction April 24, 1953 was still pending against him, so that he could not legally have been required to submit to induction. I find this contention without legal merit. Under Section 1624.44 of the Selective Service regulations a person who has been "*convicted* of a criminal offense which may be punished by death or by imprisonment for a term exceeding one year and who is not eligible for classification into a class available for service" may be placed in class IV–F, (physically, mentally, or morally unfit). Local board memorandum No. 21, issued by the national headquarters of the Selective Service System on March 8, 1949 and amended November 19, 1954 to spell out the moral standards required for induction into the armed forces, provides that "the registrant who has been *convicted* by a civil court, or who has a record of adjudication adverse to him by a juvenile court, for any of-fense punishable by death or imprisonment for a term exceeding one year is morally unacceptable for service in the armed forces *unless such disqualification is waived by the respective Department*". (Emphasis added). The Selective Service law and regulations nowhere makes the mere fact of indictment for a crime a disqualification for military service, even where the indictment pertains to an offense other than refusal to submit to induction in the armed forces. The question of whether or not there was an indictment pending against the defendant at the time of his prospective induction was therefore legally irrelevant. This is particularly true since here the only indictment pending against the defendant was the original indictment for wilful refusal to submit to induction in the armed forces and the defendant had no intention of submitting to induction on the instant occasion. It would indeed be incredible if the law were that the fact that a registrant had previously been indicted for wilful refusal to submit to induction prevented his subsequent lawful induction into the armed forces, whether the old indictment was then still pending or not.

The defendant also complains that a letter written by the local board to the State Director of the Selective Service System at the time of the defendant's second personal appearance before the board on January 3, 1952 indicates that he was not given a fair and impartial hearing by the local board. He apparently bases this contention upon one sentence in the letter to the effect that all of the board members are veterans with honorable service in either World War I or II and feel that their efforts in the past are a lost cause "in giving this young man an opportunity to be a conscientious objector". I do not so read the letter. A reading of the letter as a whole indicates on the contrary that because of their previous own military service, the board members gave the defendant's case unusually careful and thoughtful consideration. The entire purpose of the letter was to request

the personal advice and guidance of the State Director. The State Director promptly replied to the board's letter, pointing out that the new regulations provided for a registrant claiming to be a conscientious objector to be encouraged to appeal to the State Appeal Board, at which time his case would be referred to the Department of Justice for detailed investigation and recommendation and subsequent action by the appeal board. In any event the defendant's charge of bias is amply refuted by the testimony of the local board during the trial of the case and by the record of the processing of the defendant's case by the local board and the other agencies concerned.

 Moreover even if it were true that the local board was guilty of bias against the defendant's claim of conscientious objection, which I do not find to be the case here, such fact would be immaterial in view of the subsequent handling of the defendant's case. The District Appeal Board three times classified the defendant after his last classification by the local board, and it is well established that the action of the appeal board completely and finally supersedes the action of the local board even though the classification given by the appeal board is the same as that given by the local board. 50 U.S.C.A. Appendix, § 460(b) (3); Selective Service Regulation 1626.26(b); Reed v. United States, 9 Cir., 1953, 205 F.2d 216–218; Tyrrell v. United States, 9 Cir., 1952, 200 F.2d 8, 11, certiorari denied 345 U.S. 910, 73 S.Ct. 646, 97 L.Ed. 1346; United States v. Pitt, 3 Cir., 1944, 144 F.2d 169, 172; Cramer v. France, 9 Cir., 1945, 148 F.2d 801, 805. By the time of his final induction the defendant's original classification by the local board had been superseded and replaced by that of the appeal board and any earlier bias by the local board had gone out of the case.

The defendant as a fourth ground for his motions for a judgment of acquittal contends that the denial of his request in August 1955 for personal appearances before the local board and the appeal board constituted a denial of due process such as to render the final induction order invalid and illegal. I do not so view the law.

 His request for a personal appearance before the appeal board made in a letter to the local board dated August 17, 1955, can be disposed of summarily. There is no provision in either the Selective Service law or regulations for a personal appearance by a registrant before the appeal board at any time. The defendant had no right under any provision of law to such a personal appearance and cannot complain when such a personal appearance was not granted him. (In this connection it is worthy of note that the defendant had availed himself only some six weeks earlier of the new right afforded him by the appeal board under the decision of the Supreme Court in Gonzales v. United States, 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467, to submit a written reply to the Department of Justice's advisory report and recommendation to the appeal board, and had in fact submitted a three page letter to the appeal board before its final action on his case July 27, 1955.)

 Any right which the defendant may have to a personal appearance before the local board as requested in his letter of August 10, 1955 must necessarily be based upon Section 1624.1(a) of the Selective Service regulations. This section provides as follows:

"Every registrant, after his classification is determined by the local board (except a classification which is itself determined upon an appearance before the local board under the provisions of this part), shall have an opportunity to appear in person before the member or members of the local board designated for the purpose if he files a written request therefor within 10 days after the local board has mailed a Notice of Classification (SSS Form No. 110) to him. Such 10-day period may not be extended."

After a careful study of the matter I am of the opinion, and so hold, that the defendant had no legal or constitutional right to the requested personal appearance. In considering this question it must be borne in mind that we are not here concerned with the discretionary personal appearance which a local board may grant at almost any time it wishes to do so, but with the mandatory or compulsory personal appearance which a registrant has a right to demand and denial of which constitutes a denial of due process.

In the first place, this section provides that a registrant, "after his classification is determined *by the local board*", shall be granted a personal appearance if he requests it in writing within the time allowed (emphasis added). Here, as discussed above, the defendant's latest and final classification was determined by the *appeal board*, not by the local board, and the appeal board's classification had entirely superseded that of the local board. Consequently the local board's classification was no longer of any legal significance to the defendant's current status. As I read this section, it is intended to give a registrant an opportunity to appear before the local board after it has classified him, to give him a chance to discuss the classification which the board has given him. That this is the purpose of the right to a mandatory personal appearance is conclusively shown by the provisions of the following section, Section 1624.2, as to procedure for the conduct of such a personal appearance. This section refers throughout to the *local board* and its classification of the registrant. It provides, among other things, that "At any such appearance, the registrant may discuss his classification, may point out the class or classes in which he thinks he should have been placed, and may direct attention to any information in his file which he believes the local board has overlooked or to which he believes it has not given sufficient weight. The registrant may present such further information as he believes will assist the local board in determining his proper classification. * * *" Such language would be entirely inappropriate if this section were intended to apply to situations where, as here, the classification complained of was given by the appeal board rather than by the local board. United States v. Romano, D.C.S.D.N.Y. 1952, 103 F.Supp. 597.

I consequently conclude that Section 1624.1(a) was not intended to give a registrant a right to a compulsory personal appearance if requested within 10 days after notice of classification by an *appeal board,* and that this right is confined to a personal appearance requested within 10 days after notice of classification by the registrant's local board.

Even if this construction of Section 1624.1(a) be wrong, I am of the opinion, and so hold, that there is a further reason why the defendant is not entitled to the personal appearance requested here. That section goes on to provide that a registrant, "after his classification is determined by the local board *(except a classification which is itself determined upon an appearance before the local board under the provisions of this part)*", shall be granted a personal appearance if requested in the prescribed way. (Emphasis added). If the classification referred to is intended to be the last classification given the registrant by the local board even where there has been an intervening classification by the appeal board, the situation here comes squarely within the specified exception. Here the last classification given the defendant by the local board was the I–A classification given him on January 23, 1952 *following his personal appearances on December 7, 1951 and January 3, 1952.* Consequently since his last classification by the local board was itself determined upon a personal appearance before the local board, he has no right to a further personal appearance following the classification.

The provisions of Section 1624.2(e) that each classification or determination not to reopen the classification as a result of a personal appearance is followed

by the same right of appeal as in the case of an original classification demonstrates conclusively why this must be the law. If every classification, even one based upon a personal appearance, is followed by a right to another mandatory personal appearance under Section 1624.1(a), and the classification resulting from the second personal appearance is followed by the same right of appeal as in the case of an original classification, and the final classification by the appeal board is followed by the right to another personal appearance, as contended by the defendant, the process of classification would be interminable, with classifications, personal appearances, and appeals following each other and going on forever. I cannot believe that any such absurd procedure was intended. The requirements of due process and fair procedure must have an end somewhere. Otherwise our country's efforts to raise and maintain its armed forces in an orderly and equitable fashion would be completely stultified.

 Nor do I think there is any merit in the defendant's contention that he should have been granted another personal appearance because a considerable period of time had elapsed since his last one. If he had any such right, it must have been derived from Section 1624.1(a), and, as discussed above, I have concluded that he had no such right here. Moreover, regardless of the length of time since his last appearance before the local board, he had in the meantime had two hearings in which he had personally appeared before Government hearing officers with witnesses of his own choosing; his case had been reviewed three times by the appeal board, the last time as recently as July 27, 1955, only two weeks before his request for another personal appearance; his case had twice been reviewed and considered by the Department of Justice and once by the National Headquarters of the Selective Service System. It does not seem to me that the defendant can conscientiously complain that his case was not given proper consideration.

In any event it appears to me that the information submitted by the defendant along with his request for another personal appearance would not have justified the local board in reopening the defendant's classification. Klubnikin v. United States, 9 Cir., 1955, 227 F.2d 87, certiorari denied 1956, 350 U.S. 975, 76 S.Ct. 453. Section 1625.2 of the regulations provides that

"The local board *may* reopen and consider anew the classification of a registrant (1) upon the written request of the registrant, the government appeal agent, any person who claims to be a dependent of the registrant, or any person who has on file a written request for the current deferment of the registrant in a case involving occupational deferment, *if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification* ; or (2) upon its own motion if such action is based upon facts not considered when the registrant was classified *which, if true, would justify a change in the registrant's classification;* \* \* \*." (Emphasis added).

Section 1625.4 of the Regulations goes on to provide that

"When a registrant \* \* \* *files with the local board a written request to reopen and consider anew the registrant's classification and the local board is of the opinion that the information accompanying such request fails to present any facts in addition to those considered when the registrant was classified or, even if new facts are presented, the local board is of the opinion that such facts, if true, would not justify a change in such registrant's classification, it shall not reopen the registrant's classification. In such a case, the local board, by letter,* shall advise the person filing the request that the information submit-

ted does not warrant the reopening of the registrant's classification and shall place a copy of the letter in the registrant's file. No other record of the receipt of such a request and the action taken thereon is required." (Emphasis added).

Here the only new information submitted by the defendant was a photostatic copy of a "Minister's License to Solemnize Marriages" issued to him by a probate judge in Ohio under date of August 10, 1955 indicating that the defendant was "Authorized to Solemnize Marriages within" the State of Ohio. Under the criteria set out in Sections 456(g) and 466(g), Title 50 U.S.C.A.Appendix and Section 1622.43 of the Selective Service regulations, this was clearly insufficient to establish any new claim that the defendant might then be making (for the first time) that he was entitled to exemption not only as a conscientious objector but also as a minister of religion. Numerous classes of persons may be authorized to perform marriage ceremonies without being entitled to exemption as minister of religion within the meaning of Congress. If the defendant had any additional material to submit bearing on his classification, it was incumbent upon him to submit it to his local board for their consideration. Since it is apparent from an examination of his Selective Service file that he did not in fact submit any additional material then or at any later time, he cannot complain that the local board did not see fit to reopen and consider his classification anew. It is a fundamental principle of Selective Service law that the burden rests upon a registrant to establish to the satisfaction of his local board his entitlement to some claimed exemption and that until he does so his proper classification remains I–A. Selective Service regulations 1622.1(c); Tyrrell v. United States, 9 Cir., 1952, 200 F.2d 8, 12, certiorari denied 345 U.S. 910, 73 S.Ct. 646, 97 L.Ed. 1346; United States v. Schoebel, 7 Cir., 1953, 201 F.2d 31, 32; Lemien v. United States, 5 Cir., 1946, 158 F.2d 550, 551; Swaczyk v. United States, 1 Cir., 1946, 156 F.2d 17, 19, certiorari denied 329 U.S. 726, 67 S.Ct. 77, 91 L. Ed. 629; Sisquoc Ranch Co. v. Roth, 9 Cir., 1946, 153 F.2d 437, 441; Rase v. United States, 6 Cir., 1942, 129 F.2d 204, 207. Under the circumstances I find and conclude that the local board's refusal to reopen the defendant's classification upon the basis of the little information submitted to it by the defendant was entirely justified and proper and did not constitute a denial of any of the defendant's procedural rights. Gonzales v. United States, 1955, 348 U.S. 407, 417, 75 S.Ct. 409, 99 L.Ed. 467.

In my opinion this is particularly true here in view of the defendant's testimony during the trial that he considered that he became a minister in October 1953—almost two years before he made any mention to his draft board of such a claim. A registrant cannot save up his various claims for exemption until he sees that his previous one has finally been rejected and then haul out another claim and start the whole process of personal appearances and appeals all over again. The Selective Service process of classification and induction is already sufficiently cumbersome and encrusted with procedural technicalities without permitting such conduct on the part of a registrant, unless there is some good faith explanation for the delay, which I do not find to be the case here.

As a fifth ground for his motion for a judgment of acquittal made at the conclusion of the evidence, the defendant contends that the exclusion from evidence of a letter which the defendant supposedly wrote to the South Carolina State Director of Selective Service some four days before the date scheduled for his induction, and of his testimony as to some conversation which he allegedly had with a clerk at the State Selective Service headquarters on the date he was under orders to be inducted, was prejudicial error. There appears to me to be no merit in this contention. Under Section 1625.2 of the Selective Service regulations, "the classification of a regis-

trant shall *not* be reopened after the local board has mailed to such registrant an Order to Report for Induction (SSS Form No. 252), *unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control.*" Here the defendant had already been ordered to report for induction and, at the time of the alleged conversation, had in fact already reported at the induction station; and any letter which he may have mailed to the State Director and any conversation he may have had with a clerk at State Selective Service were legally irrelevant. If he had had any additional facts to report or material to submit which would have justified a change in his classification, it was his duty under the regulations promulgated for the orderly administration of the Selective Service System to bring it to the attention of his local board so as to take himself out of the prohibition prescribed by Section 1625.2 of the regulations against reopening his classification at such a time. It is apparent from his Selective Service file that he did not do so and he cannot now during the trial of this case attempt to add additional evidence and material to his file which was not contained in his file at the time of his classification by the Selective Service boards. Cox v. United States, 332 U.S. 442, 454, 68 S.Ct. 115, 92 L.Ed. 59; Davis v. United States, 8 Cir., 1953, 203 F.2d 853, 858, certiorari denied 345 U. S. 996, 73 S.Ct. 1138, 97 L.Ed. 1403; United States v. Schoebel, 7 Cir., 1953, 201 F.2d 31.

■ The defendant's sixth ground for his motion for a judgment of acquittal is to the effect that the appeal board should have had before it at the time of its consideration of the defendant's case in July 1955 the report and recommendation made to the Department of Justice by the hearing officer who conducted the defendant's 1955 (second) hearing, and that this omission was an erroneous denial of due process. I cannot find any basis for such a con-

tention in the Selective Service Act or regulations or in any of the decisions thereunder. The Supreme Court in the Nugent case, supra, added a requirement, nowhere set out in the previous statute or regulations, that a registrant be given a "fair résumé" of the adverse evidence in the investigative reports in connection with a Department of Justice hearing on a claim of conscientious objection. The Department of Justice accordingly modified its procedure and began providing registrants with a written summary of *all* the evidence in the investigative reports, favorable as well as adverse, along with notice of the hearing. Simmons v. United States, 1955, 348 U.S. 397, 75 S.Ct. 397, 99 L. Ed. 453. The Supreme Court then in the case of Gonzales v. United States, 1955, 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467, added still another requirement that a registrant be given a copy of the advisory report and recommendation of the Department of Justice and an opportunity to reply to it. The appellate procedure was accordingly again modified to provide that the appeal board, upon receipt of the Department of Justice advisory report and recommendation, should mail the registrant a copy of said report and recommendation and give him 30 days within which to file a written reply. Both of these steps—supplying the defendant with a written résumé of the investigative reports and with a copy of the Justice Department's report and recommendation—were duly carried out in connection with his 1955 hearing, and the defendant availed himself of the opportunity to appear before the hearing officer and to file a written reply to the Justice Department's report. So far as I have been advised or been able to discover, there is no requirement under the statute, the regulations, or the decisions that a registrant be provided with a copy of the hearing officer's report and recommendation to the Department of Justice. Nor for my own part do I consider that due process requires any such procedure. As stated in United States v. Nugent, 346 U.S. 1, 7,

73 S.Ct. 991, 995, 97 L.Ed. 1417, 1423, "The statute does entitle the registrant to a 'hearing,' and of course no sham substitute will meet this requirement; but we do not think that the word 'hearing'—when put in the context of the whole scheme for review set forth in § 6(j)—comprehends the formal and litigious procedures which respondents' interpretation would attribute to it." It would seem to me that sufficient safeguards have already been incorporated into the procedure involved in a Department of Justice conscientious objector hearing to insure a fair hearing and to satisfy all the requirements of due process.

In conclusion I might add that my impressions as to the defendant's sincerity, as derived from a careful study of his Selective Service file and from his demeanor and attitude during the trial of his case, were not favorable. Throughout his communications to the various Selective Service agencies contained in his file and his conduct and manner during the trial runs a contentious, chip-on-the-shoulder attitude indicating a stubborn intention to take advantage of every personal appearance, appeal, hearing, technicality and delay allowed under the Selective Service law, regulations and decisions—including some not even provided for in the law—and to hold every individual or agency dealing with his case to a strict and literal compliance with every rule and regulation. See, for example, his numerous communications to the local board, the appeal board, the State Director and the National Director; his request for a personal appearance before the appeal board; and the sarcastic and disputatious tone of his letter of June 21, 1955 to the appeal board in reply to the Department of Justice advisory report ("I didn't know I was supposed to inform him (the hearing officer) of what to do. * * *"; "Why the change by the Dept. of Justice? Can't they agree on what to disagree on?")

In my opinion there was ample basis in fact to sustain the defendant's I–A classification and the Selective Service boards' denial of his claims for exemption, and the defendant was not denied any material procedural right to which he was entitled.

Since there can be no doubt that the defendant wilfully and deliberately refused to submit to induction into the military service, the conclusion follows that he is guilty as charged.

And it is so ordered.