**UNITED STATES of America ex rel. Edward Gordon SANDERS, Relator,**

v.

**Major General Thomas YANCEY, Commanding General, Fort Hamilton, New York and Lt. Col. Thomas G. Murphy, Commander, Armed Forces Examination and Entrance Station, Fort Hamilton, New York, Respondents.**

**No. 66–M–448.**

United States District Court E. D. New York.

June 2, 1966.

Broder, Feinberg & Charles, New York City, for relator; Alfred W. Charles, New York City, of counsel.

Joseph P. Hoey, U. S. Atty., Eastern District of New York; Ronald Gene Wohl, Asst. U. S. Atty., of counsel.

BRUCHHAUSEN, District Judge.

The relator petitions for a writ of habeas corpus, claiming that he was illegally inducted into the Army. His principal contention is that upon his enlistment in the National Guard Reserve he should have been reclassified by the Selective Service Board to a class other than 1-A.

### FACTS

Feb. 22, 1945—Date of relator's birth.

Feb. 28, 1963—Relator registered with the Selective Service Board. Subsequently he was classified as a student under 2S.

June 1965—Relator, in reply to a questionnaire, stated he was no longer a student whereupon the Board reclassified him in 1-A and so informed him.

Sept. 27, 1965—Relator enlisted in the National Guard Reserve.

Oct. 20, 1965—Order directing relator to report for induction on Novem-

ber 17, 1965. The said order contains the following provision, viz: "If you had previous military service, or are now a member of the National Guard or a reserve component of the Armed Services, bring evidence with you."

Nov. 8, 1965—Report of separation of relator from National Guard Reserve for physical disqualification.

Nov. 8, 1965—Relator discharged from the National Guard Reserve.

Nov. 12, 1965—Order postponing induction to January 1966. It set forth the reason as follows: "Doctor's statement verifying registrant has acute infectious mononucleosis."

The said statement is based on the letter of relator's doctor, Louis Finger, dated October 26, 1965, stating in part, viz:

"I am now treating Mr. Edward Sanders for acute infectious mononucleosis, with a severe grade of associated hepatitis. He took ill on September 28, 1965, has been in bed since then, and bids fair to so remain for about three months longer."

The doctor added that relator's physical activities would be markedly limited for the ensuing year or two.

Dec. 30, 1965—Order postponing induction, pending review by the examining authorities, based on doctor's written statement dated December 27, 1965 that registrant was convalescing from acute infectious mononucleosis associated with a considerable hepatitis.

Jan. 20, 1966—Issuance of Operations Bulletin No. 287 by the Director of Selective Service to the effect that cancellation of induction orders by draft boards should be limited to individuals who have been accepted for regular enlistments.

Jan. 25, 1966—Order postponing induction to February 8, 1966.

Feb. 1, 1966—Order postponing induction to March 1966, to straighten out status with National Guard regarding discharge.

Mar. 7, 1966—Relator's letter to Board, requesting reopening of his classification and stating that he should be considered a member of the National Guard in that "he improperly received an honorable discharge, erroneously based on medical reasons" and that the Board "was somehow inadvertently not notified of my military service."

Apr. 19, 1966—Order of National Guard, signed by Major General A. C. O'Hara, Chief of Staff, directing the relator to report to active duty on May 16, 1966 for six months of training.

Apr. 22, 1966—Order of Selective Service Board, directing relator to report for induction on May 10, 1966.

Apr. 29, 1966—Order of National Guard, revoking aforesaid order of April 19, 1966, as pertaining to relator.

Apr. 28, 1966—Letter from National Guard to Selective Service Board, dated April 28, 1966 requesting that induction be delayed and stating that if relator is medically qualified he will be enlisted in the National Guard on or about May 5, 1966.

May 11, 1966—Letter from Major General O'Hara, National Guard, to the relator, viz:

"Inclosed is a chronological listing of events pertaining to your military status.

"Selective Service Regulations prohibit your enlistment in the New York Army National Guard subsequent to 20 January 1966.

"There is no further action that can be taken by this office."

The said chronological listing is as follows:

*"Morning Report Entries*

| | |
|---|---|
| 27 Sep 65 | Enlisted |
| 28 Sep 65 | AWOL |
| 17 Oct 65 | AWOL |
| 19 Oct 65 | Sick at home |
| 26 Oct 65 | Sick at home |
| 30 Oct 65 | Sick at home |
| 31 Oct 65 | Sick at home |
| 9 Nov 65 | Duty to Honorable Discharge, physical disability effective 8 Nov 65 |
| 23 Oct 65 | Letter of Dr. Finger |
| 26 Oct 65 | Letter requesting discharge |
| 9 Nov 65 | DMNA SO 215, paragraph 3—concurrent discharge for physical disability." |

May 13, 1966—Letter from Major General O'Hara of the National Guard to relator—

"I am inclosing, for your information, a copy of my letter to the Commanding General of the 42d Infantry Division, advising him that you are no longer under the jurisdiction of the National Guard and that no further action is indicated on the part of his headquarters."

AS TO THE RELATOR'S CLAIM THAT HE WAS A MEMBER OF THE NATIONAL GUARD RESERVE PRIOR TO THE ORDER OF INDUCTION AND STILL IS A MEMBER THEREOF AND THEREFORE WAS AND IS ENTITLED TO DEFERMENT.

The relator relies upon Title 50 App. Section 456 (c) (2) (A) which in substance provides that any person, who, prior to attaining the age of twenty-six years and prior to the issuance of an order for him to report for induction, enlists or accepts appointment in the Ready Reserve of the Army National Guard shall be deferred from training and service under the Universal Military Training and Service Act.

As stated, the relator enlisted in the National Guard Reserve on September 27, 1965, four months after he had been classified 1-A and was so advised. His Selective Service Board was not advised of such enlistment until four or five months thereafter.

He admits receiving a discharge from the National Guard Reserve on or about November 8, 1965 and now contends that such discharge was unlawful. Apparently the discharge was based upon the statements of his physician that the relator was seriously ill and that his physical activities would be markedly limited for a year or two. (See letter of Dr. Louis Finger to the Selective Service Board, dated October 26, 1965). No mention was made in said letter of the National Guard enlistment. It is interesting to note that under date of October 23, 1965 Dr. Finger wrote an identical letter to the National Guard Reserve and made no mention of relator's registration with Selective Service or of the order of induction, dated October 20, 1965.

Despite the provision in the Board's induction order, dated October 20, 1965 advising relator that if he was then a member of the National Guard Reserve, he should submit evidence thereof to the Board, he failed to mention such enlistment.

The said order required relator to report for induction on November 17, 1965. The relator, continuing his silence upon the subject of his National Guard status, by order of the Board, dated November 12, 1965 was accorded a postponement of induction to the January 1966 induction date, upon Dr. Finger's plea on his behalf that the relator suffered from acute infectious mononucleosis.

By order of the Board, dated December 30, 1965 the relator's induction was postponed pending review by the examining

authorities, upon the plea of Dr. Finger that the relator was suffering from acute infectious mononucleosis associated with a considerable hepatitis. Again no mention was made about the National Guard enlistment.

 The Court concludes that the relator's service in the National Guard was lawfully terminated by his discharge on November 8, 1965.

### THE RELATOR HAS FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES

 In June 1965, the relator, in reply to the Board's questionnaire was reclassified in 1-A and was so informed.

In Sisquoc Ranch Co. v. Roth, 9 Cir., 153 F.2d 437, the Court stated:

"The original classification * * * is fixed primarily from information contained in the registrant's returned questionnaire * * *. The presumption, of course, is that the board, when it has acted, has done its duty and has correctly fixed the classification."

Between October 20, 1965, the date of the order for the induction of the relator and March 7, 1966, the date of his letter to the Board, requesting a reopening of his classification, the relator made no move to contest the classification in 1-A, or to request a hearing or to initiate an appeal.

In United States v. Corliss, D.C., 173 F.Supp. 677, affirmed 2 Cir., 280 F.2d 808, certiorari denied, 364 U.S. 884, 81 S.Ct. 167, 5 L.Ed.2d 105, the Court said:

"It is incumbent upon the registrant to establish to the satisfaction of the local board his eligibility for deferment or exemption. 32 CFR 1622.1(c), 1622.10."

In Pickens v. Cox, 10 Cir., 282 F.2d 784, the Court stated:

"The burden is upon the registrant to claim and establish the right to exemption, and the exemption may be waived or abandoned like any other personal privilege."

The relator has utterly failed to establish his contentions.

The relator's application for a writ of habeas corpus is denied.

Submit order.