## McNALLY *v.* HILL, WARDEN.

No. 15. Argued October 12, 1934.—Decided November 5, 1934.

132

*Mr. John S. Wise, Jr.,* submitted for petitioner.

*Mr. Justin Miller,* with whom *Solicitor General Biggs* and *Messrs. Harry S. Ridgely* and *W. Marvin Smith* were on the brief, for respondent.

MR. JUSTICE STONE delivered the opinion of the Court.

Certiorari, 292 U. S. 619, brings this case here for review of a judgment of the Circuit Court of Appeals directing dismissal, on the merits, of a petition for a writ of *habeas corpus.* Petitioner was convicted and sentenced to be imprisoned upon two indictments framed under the Conspiracy Act of May 17, 1879, c. 8, 21 Stat. 4, as amended by Act of March 4, 1909, c. 321, § 37, 35 Stat. 1088, 1096, U. S. C., Title 18, § 88, and the National Motor Vehicle Theft Act of October 29, 1919, c. 89, 41 Stat. 324, 325, U. S. C., Title 18, § 408. The indictment, which alone need be considered here, was in three counts: the first charged petitioner and others with conspiracy to violate the provisions of the Motor Vehicle Theft Act; the second, the interstate transportation of a stolen motor vehicle; and the third, which is assailed here, the violation of § 4 of the Motor Vehicle Theft Act, by the sale in New Jersey of a motor vehicle which had been stolen in New York, "knowing that the vehicle had been so stolen and transported in interstate commerce." Petitioner was sentenced for a term of two years on the first count and for terms of four years each on the second and third counts, the sentence on the first to run concurrently with that on the second, the sentence on the second and third to run consecutively. Service of sentence was begun on November 30, 1931. It is conceded that the

sentence on the second count, less allowances for good behavior, has not expired and that service of sentence on the third has not yet begun.

On April 6, 1933, the petitioner filed his petition for writ of *habeas corpus* in the district court for the middle district of Pennsylvania. He assailed the conviction and sentence on the third count as void. No attack was made on the conviction and sentence on the other counts, but the petition advanced as reasons for granting the writ that under the Parole Act of June 25, 1910, c. 387, § 1, 36 Stat. 819, as amended by the Act of January 23, 1913, c. 9, 37 Stat. 650; U. S. C., Tit. 18, § 714, petitioner was eligible to apply for parole, to be granted, in the discretion of the Parole Board, after serving one-third of his sentence; that he had served one-third or more of the valid sentence on the first and second counts, but less than one-third of the total period of imprisonment to which he had been sentenced on the three counts; and that consideration by the Parole Board of any application for his parole was precluded by reason of the outstanding, but void, sentence on the third count.

Numerous objections to the validity of the conviction and sentence under the third count were urged either in the district court or the Court of Appeals. The only one considered by the Court of Appeals was that the third count was void because it failed to charge the petitioner, in conformity to the words of § 4 of the statute, with having sold a stolen motor vehicle "moving as, or which is a part of, or which constitutes interstate or foreign commerce," but had charged him, instead, with knowingly selling a stolen motor vehicle which "had theretofore been transported in interstate commerce"; that it had thus failed to charge an offense against the United States since it appeared that the motor vehicle, at the time of the sale, had ceased to be the subject of interstate commerce.

The Court of Appeals did not consider whether the writ of *habeas corpus* could rightly be used to test the validity of the sentence on the third count, while the petitioner was in lawful custody under the sentence on the second, or whether the writ was improperly used as an attempted substitute for an appeal from the judgment of conviction. It contented itself with passing upon the sufficiency of the indictment and held that the act of sale charged was so closely related to the interstate transportation of the motor vehicle as to constitute the federal offense defined by the statute. It accordingly treated the alleged defects in the indictment as no more than formal and affirmed the order of the district court dismissing the petition. 69 F. (2d) 38.

We find it unnecessary to consider the questions raised or decided below, which the petitioner presses here. We conclude that, as it appears from the petition that the detention of petitioner is lawful under the sentence on the second count, there is no occasion, in a *habeas corpus* proceeding, for inquiry into the validity of his conviction under the third.

The use of the writ of *habeas corpus* as an incident of the federal judicial power is implicitly recognized by Article I, § 9, Clause 2 of the Constitution, which provides: " The privilege of the writ of *habeas corpus* shall not be suspended, unless when in cases of rebellion or invasion the public safety may require it." The justices of this Court and judges of the district courts were expressly given power to issue the writ by § 14 of the Judiciary Act of September 24, 1789, 1 Stat. 73, 81, 82, now embodied, with additions, in Chapter 14, Title 28, U. S. C. Under the statute in its present form the writ may issue " for the purpose of inquiry into the cause of restraint of liberty," but with the proviso that it " shall in no case extend to a prisoner in jail unless where he is in custody under or by color of the authority of the United States,

. . . or is in custody for an act done or omitted in pursuance of a law of the United States . . . or is in custody in violation of the Constitution or of a law or treaty of the United States;" §§ 451, 452, 453, Title 28, U. S. C.

The statute does not define the term *habeas corpus.* To ascertain its meaning and the appropriate use of the writ in the federal courts, recourse must be had to the common law, from which the term was drawn, and to the decisions of this Court interpreting and applying the common law principles which define its use when authorized by the statute. *Ex parte Bollman,* 4 Cranch 75, 93, 94; *Ex parte Kearney,* 7 Wheat. 38; *Ex parte Watkins,* 3 Pet. 193, 201, 202; *Ex parte Yerger,* 8 Wall. 85, 95; *Ex parte Parks,* 93 U. S. 18, 21, 22; *Ex parte Siebold,* 100 U. S. 371, 375; *Crowley* v. *Christensen,* 137 U. S. 86, 94; see *Whitney* v. *Dick,* 202 U. S. 132; *Craig* v. *Hecht,* 263 U. S. 255.

Originating as a writ by which the superior courts of the common law and the chancellor sought to extend their jurisdiction at the expense of inferior or rival courts, it ultimately took form and survived as the writ of *habeas corpus ad subjiciendum,* by which the legality of the detention of one in the custody of another could be tested judicially. See Holdsworth, History of the English Law, Vol. 9, 108–125. Its use was defined and regulated by the Habeas Corpus Act of 1679, 31 Car. II, c. 2. This legislation and the decisions of the English courts interpreting it have been accepted by this Court as authoritative guides in defining the principles which control the use of the writ in the federal courts. See *Ex parte Watkins, supra,* 202; *Ex parte Yerger, supra,* 95; *Ex parte Parks, supra,* 21, 22.

The purpose of the proceeding defined by the statute was to inquire into the legality of the detention, and the only judicial relief authorized was the discharge of the prisoner or his admission to bail, and that only if his

detention were found to be unlawful.[1]  In this, the stat-
ute conformed to the traditional form of the writ, which
put in issue only the disposition of the custody of the pris-
oner according to law.[2]  There is no warrant in either the
statute or the writ for its use to invoke judicial determina-
tion of questions which could not affect the lawfulness
of the custody and detention, and no suggestion of such
a use has been found in the commentaries on the Eng-
lish common law.[3]  Diligent search of the English author-

---

[1] The Habeas Corpus Act appears from its preamble to have been
especially, although not exclusively, directed at cases in which the
King's subjects were detained in custody upon a criminal charge
where by law they were entitled to bail.  It authorized the writ to
issue, directed to any sheriff or gaoler, or other person " for any
person in his or their custody."  It commanded the production of the
prisoner before the judicial officer to whom the writ was to be returned
and directed that such officer " shall discharge " the " prisoner from
his imprisonment " with provision for taking bail in his discretion,
" unless it shall appear " to him that the petitioner " is detained upon
a legal process, order or warrant out of some court that hath jurisdic-
tion of criminal matters " or upon warrant for an offense " for which
by law the prisoner is not bailable."   31 Car. II, § II (2), § III (6)
(7).

[2] The writ, in its historic form, like that now in use in the federal
courts, was directed to the disposition of the custody of the prisoner.
It commanded the officer to " have the body " of him " detained in
our prison under your custody," " together with the day and cause of
his being taken and detained," before the judge at a specified time
and place " to do and receive all and singular those things which our
said chief justice shall then and there consider of him in this behalf."
Richardson, The Attorney's Practice in the Court of Kings Bench,
vol. 1, p. 369.  Numerous writs, in substantially the same form, used
between 5 Edw. IV and James II, are collected in Tremaine, Pleas of
the Crown, 351–435.  The earliest of these is reprinted in Coke's
Second Institutes, 53.  And see Hurd, Habeas Corpus, 232–233.

[3] Bacon, in his Abridgement, 425, declared the writ " is the most
usual remedy by which a man is restored to his liberty if he hath by
law been deprived of it."   And Hale said that it was designed " to
remove or avoid the imprisonment."   Analysis of the Law, 78; see

ities and the digests before 1789 has failed to disclose any case where the writ was sought or used, either before or after conviction, as a means of securing the judicial decision of any question which, even if determined in the prisoner's favor, could not have resulted in his immediate release.[4]

Such use of the writ in the federal courts is without the support of history or of any language in the statutes which would indicate a purpose to enlarge its traditional function. Section 14 of the Judiciary Act, by the language already quoted, was at pains to declare that the writ might issue for the purpose of inquiring into the cause of restraint of liberty. Without restraint of liberty, the writ will not issue. *Wales* v. *Whitney*, 114 U. S. 564; *Stallings* v. *Splain*, 253 U. S. 339, 343. Equally, without restraint which is unlawful, the writ may not be used. A sentence which the prisoner has not begun to serve cannot be the cause of restraint which the statute makes the subject of inquiry.

Considerations which have led this Court to hold that *habeas corpus* may not be used as a writ of error to correct an erroneous judgment of conviction of crime, but may be resorted to only where the judgment is void because the court was without jurisdiction to render it, *Ex parte Watkins, supra*, 203; *Knewel* v. *Egan*, 268 U. S. 442, 445, 447, lead to the like conclusion where the prisoner is

---

also Pleas of the Crown, 143. And see Coke, Second Institutes, 52, 53; Comyns, Digest of the Laws of England, 454; Blackstone, Commentaries, vol. 1, 129–137.

[4] The Court of Kings Bench, in *Rex* v. *Clarkson*, 1 Stra. 444, in refusing to order the release of a woman content to remain with her guardian, said: " We have nothing to do . . . but only to see that she is under no illegal restraint." See *Brass Crosby's Case*, 3 Wils. 189, 198. " This is a writ by which the subject has a right of remedy to be discharged out of custody, if he hath been committed and is detained contrary to law."

lawfully detained under a sentence which is invalid in part. *Habeas corpus* may not be used to modify or revise the judgment of conviction. *Harlan* v. *McGourin,* 218 U. S. 442; *United States* v. *Pridgeon,* 153 U. S. 48, 63. Even when void, its operation may be stayed by *habeas corpus* only through the exercise of the authority of the court to remove the prisoner from custody. That authority cannot be exercised where the custody is lawful.

Wherever the issue has been presented, this Court has consistently refused to review, upon *habeas corpus,* questions which do not concern the lawfulness of the detention.[5] *In re Graham,* 138 U. S. 461; *In re Swan,* 150 U. S. 637, 653; *Harlan* v. *McGourin, supra; United States* v. *Pridgeon, supra; Nishimura Ekiu* v. *United States,* 142 U. S. 651; *Iasigi* v. *Van der Carr,* 166 U. S. 391; *Hale* v. *Henkel,* 201 U. S. 43, 77; *Ex parte Wilson,* 114 U. S. 417, 421. The lower federal courts have generally denied petitions for the writ where the prisoner was at the time serving a part of his sentence not assailed as invalid.[6]

---

[5] In *Morgan* v. *Devine,* 237 U. S. 632, 637, the writ was denied on the merits and in *Ex parte Spencer,* 228 U. S. 652, petition for the writ was denied because sought to be used as a substitute for a writ of error, although in each case the petitioner had not served an admittedly valid part of his sentence. In neither case did the opinion discuss the question whether the application was premature.

[6] The Courts of Appeals in circuits other than the 8th have uniformly denied petitions for writs of *habeas corpus* when the prisoner was not at the time serving the part of the sentence said to be invalid. *Carter* v. *Snook,* 28 F. (2d) 609 (C. C. A. 5th); *Eori* v. *Aderhold,* 53 F. (2d) 840, 841 (C. C. A. 5th); *De Bara* v. *United States,* 99 Fed. 942 (C. C. A. 6th); *United States* v. *Carpenter,* 151 Fed. 214 (C. C. A. 9th); *Mabry* v. *Beaumont,* 290 Fed. 205, 206 (C. C. A. 9th; *Dodd* v. *Peak,* 60 App. D. C. 68; 47 F. (2d) 430, 431. And to the like effect, see *Woodward* v. *Bridges,* 144 Fed. 156 (D. C.); *Ex parte Davis,* 112 Fed. 139 (C. C.). This was the view of the Court of Appeals for the Eighth Circuit in *Connella* v. *Haskell,* 158 Fed. 285, 289. But in *O'Brien* v. *McClaughry,*

The petitioner asks here only a ruling which will establish his eligibility for parole, because of the invalidity of the sentence on the third count. The ruling sought is such as might be obtained in a proceeding brought to mandamus the Parole Board to entertain his petition for parole, if the sentence on the third count were void for want of jurisdiction of the court to pronounce it. This use of *habeas corpus* is unauthorized by the statutes of the United States, and for that reason the judgment must be

*Affirmed.*

209 Fed. 816, 820, 821, that court, in order that the prisoner might apply for parole for the valid part of his sentence, remanded the prisoner with directions to the District Court to discharge the prisoner from custody with respect to the invalid sentence, but to remand him to custody upon the valid sentence. This procedure was followed by the same court in *Cahill* v. *Biddle,* 13 F. (2d) 827, 828, 829. But see *Morgan* v. *Sylvester,* 231 Fed. 886, 887; *Hostetter* v. *United States,* 16 F. (2d) 921, 923; and *Schultz* v. *Biddle,* 19 F. (2d) 478, 480, in the same court.

In *Colson* v. *Aderhold,* 5 F. Supp. 111, the district court for northern Georgia entertained a writ for *habeas corpus,* reduced the sentence from fifty to thirty-five years, and remanded him for custody to serve the valid part of his sentence.