16822

POLK v. MANNING

(79 S. E. (2d) 875)

468

*Mr. Bill Polk, Appellant, Acting in own defense.*

*Messrs. T. C. Callison, Attorney General,* and *Daniel R. McLeod, Assistant Attorney General,* of Columbia, *for Respondent,*

January 18, 1954.

PER CURIAM.

This appeal presents for consideration the construction to be given the following sentences imposed upon appellant, pursuant to which he is now confined in the South Carolina Penitentiary:

"No. 11—York County

"The sentence of the Court is: That you, Bill Polk, be confined upon the public works of York County for a period of three (3) years at hard labor or for a like period in the State Penitentiary.

"J. Henry Johnson
"Presiding Judge

"Date sentenced
"April 13, 1942

"No. 12—York County

"The sentence of the Court is: That you, Bill Polk, be confined upon the public works of York County for a period of three (3) years at hard labor or for a like period in the State Penitentiary, this sentence to run consecutively with sentence No. 11.

"J. Henry Johnson
"Presiding Judge

"Date sentenced
"April 13, 1942

"No. 13—York County

"The sentence of the Court is: That you, Bill Polk, be confined upon the public works of York County for a period of four (4) years at hard labor or for a like period in the State Penitentiary, this sentence to run consecutively with Sentences Nos. 11 and 12.

"J. Henry Johnson
"Presiding Judge

"Date sentenced
"April 13, 1942

"Chesterfield County

"The judgment of the Court is: That you, William Polk, alias Bill Polk, be confined at hard labor for a period of ten (10) years upon the public works of Chesterfield County or for a like period in the State Penitentiary, to become effective after service of the sentence he is now serving in York County, S. C., and after he is delivered to or reports to the Sheriff of Chesterfield County, S. C.

"E. C. Dennis
"Presiding Judge"

"June 8, 1942.

The latter sentence has been construed by the Court below to begin to run at the expiration of York County Sentence No. 13.

The appellant contends that the sentence imposed upon him by Judge Dennis on June 8, 1942, began to run at the expiration of the first (No. 11) of the three sentences imposed upon him on April 13, 1942, by Judge J. Henry Johnson. It is his position that, at the time he was sentenced by Judge E. C. Dennis, he had entered upon service of sentence No. 11 and that Judge Dennis intended that he begin service of the ten-year sentence imposed upon him on June 8, 1942, at the expiration of sentence No. 11; and that, therefore, the ten-year sentence began to run concurrently with Sentences Nos. 12 and 13. He thus maintains that the total time he is required to serve is thirteen (13) years. Under the construction given these sentences by two Circuit Judges, appellant will be required to serve a total of twenty (20) years, it being considered that it was the intention of Judge Dennis that the ten-year sentence last imposed upon appellant was to begin at the expiration of the last of the three sentences previously imposed upon appellant by Judge Johnson.

Reference to the sentence imposed by Judge Dennis shows clearly that the sentence was to commence after the expiration of all of the three sentences previously

imposed upon appellant. This conclusion is obvious even though full effect be given to the general rule that doubts, uncertainties and ambiguities in a sentence will normally be resolved in favor of the prisoner.

In determining whether several sentences are to run consecutively or concurrently, they should reasonably be construed in accordance with the intent of the trial court, if the language used makes the intent clear. But the elimination of every conceivable doubt is not requisite to their validity or enforcement. The elimination of every possible doubt cannot be demanded. *Ziebart v. Hunter*, 10 Cir., 177 F. (2d) 847, 848, *United States v. Daugherty*, 269 U. S. 360, 46 S. Ct. 156, 70 L. Ed. 309.

Appellant relies primarily upon the fact that Judge Dennis used the word "sentence" in the singular in requiring that the ten-year sentence begin "after service of the *sentence* he is now serving in York County, S. C. * * *", and argues that the "sentence" therein referred to could only mean sentence No. 11. However, the remaining portion of the sentence of Judge Dennis, as set forth above, reveals that he intended that the appellant complete all terms of service in York County before he should begin service of the sentence imposed upon him in Chesterfield County.

The precise situation was considered in the recent case of *Ong v. Hunter*, 10 Cir., 196 F. (2d) 256, 257, and the Court there flatly rejected a similar contention. In that case, the United States District Court for the District of Kansas imposed a sentence, under identical circumstances, which is nearly identical with the sentence imposed in the instant case by Judge Dennis. With respect to the petitioner's contentions in that case, the Court stated:

"We do not think the Kansas Court had in mind such refinement of reasoning as appellant argues for. It is, of course, essential that criminal sentences be reasonably certain, definite and free from ambiguities. * * * But the elimi-

nation of every conceivable doubt is not requisite to their validity or enforcement. * * * It is not required that every possibility which may be conjured up by an active mind be eliminated. We find no uncertainty in the meaning of the sentence in question and agree with the trial court that the sentencing court intended the three year sentence (which was analogous to the sentence imposed by Judge Dennis herein) to be served in addition to the fifteen years (which comprised consecutive sentences similar to those imposed by Judge Johnson), which appellant was required to serve * * *."

It should be noted that this case was decided without reference to any guiding or controlling Federal statute, but the Court's conclusion was reached in accordance with governing Federal principles which are similar to those prevailing in this jurisdiction.

The same point was raised in *McNealy v. Johnston,* 9 Cir., 100 F. (2d) 280, 282, and the Court there held that a nearly identical sentence was not considered by the Court to present any "serious uncertainty." The prisoner in that case contended that the phrase "at the expiration of the sentence he is now serving" applied only to the first of two prior consecutive sentences, which contention is the same as is here made. By way of dicta, the Court stated that the prisoner's contention in that regard "may" be correct but added: "We do not mean to intimate that we have come to such a conclusion."

Subsequently, in another proceeding, *McNealy v. Johnston,* D. C., 30 F. Supp. 312, 313, the same point was pressed by the prisoner and was rejected by the District Court, the Court stating that the phrase "at the expiration of the sentence he is now serving" applied to the second and last of prior consecutive sentences.

It is not unusual or unreasonable to consider, as Judge Dennis apparently did, that two or more consecutive sentences, imposed at the same time by the same Judge, would

ordinarily be considered as a single "sentence." *Cf. Ex parte Klugh,* 132 S. C. 199, 208, 128 S. E. 882, 887, where the defendant was convicted on three counts, each carrying a maximum penalty of one year, and was sentenced for a period of three (3) years without reference to separability of punishment. The Court considered it to be a "sentence in gross" and stated that "this sentence embraced the three one-year terms of imprisonment which the court had power to impose." Clearly, in that case, this court considered that the term "sentence" designated three separate, consecutive sentences.

Consecutive sentences are frequently considered as separate sentences for certain purposes while, for others, they may be considered a single sentence. It is sometimes broadly stated that a prisoner serving the first of two consecutive sentences is not serving the second sentence. Such conclusions are generally stated in proceedings upon applications for the Writ of *Habeas Corpus* in which it is sought to attack the validity of a consecutive sentence upon which the prisoner has not entered service. *Crow v. United States,* 9 Cir., 186 F. (2d) 704; *McNally v. Hill,* 293 U. S. 131, 55 S. Ct. 24, 79 L. Ed. 238. Similarly, consecutive sentinct for the purpose of suspension of one of such sentences, *Weber v. Squier,* 9 Cir., 124 F. (2d) 618, or for modification of a subsequent consecutive sentence, *Kirk v. United States,* 9 Cir., 185 F. (2d) 185.

The intent of the Court that the ten-year sentence imposed on June 8, 1942, should begin to run at the expiration of all previous sentences, is clearly disclosed by the express proviso stated therein that appellant should begin service of the ten-year sentence "after he is delivered to or reports to the Sheriff of Chesterfield County." The sentence of Judge Dennis shows that the Court had knowledge that the petitioner had previously been sentenced in York County to a total of ten years, and the inclusion of the quoted portion set forth above shows the intent of the Court to require the petitioner to complete service of all York County

sentences before entering upon service of the sentence imposed in Chesterfield County. In the orders of Judge Bellinger and Judge Eatmon consideration of this portion of the sentence of Judge Dennis was apparently determinative.

When Judge Dennis imposed a sentence of ten (10) years upon the petitioner on June 8, 1942, he was aware that the petitioner had previously been sentenced to a total period of ten (10) years in York County. In requiring that the petitioner undergo service of the ten-year sentence last imposed "after being delivered to or reporting to the Sheriff of Chesterfield County," he clearly intended that all of the prior consecutive terms of imprisonment in York County be completed before service of the ten-year sentence should begin. The petitioner, therfore, had imposed upon him sentences totaling a period of twenty (20) years.

We have hereinbefore referred to an order of Judge Bellinger, which order is shown in the transcript of record and is dated July 1, 1952, in which he dismissed a writ in habeas corpus which he had issued in this case. Judge Bellinger passed upon the identical issue which was made before Judge Eatmon in a writ which he had issued, and Judge Eatmon could have well held that the order of Judge Bellinger was *res judicata,* there being no appeal therefrom. However, at the hearing before Judge Bellinger appellant did not have the aid of counsel but undertook to represent himself, and under these circumstances Judge Eatmon considered anew his petition and the return of the State, at which hearing before Judge Eatmon the appellant was represented by counsel. On the merits, Judge Eatmon discharged the writ which he had issued, and properly so. Both Judge Bellinger and Judge Eatmon held that the sentence of Judge Dennis, given the appellant in Chesterfield County, did not commence until he had served the three sentences given him in York County by Judge J. Henry Johnson.

At the hearings before Judge Bellinger and Judge Eatmon, no issue was raised as to when the several sentences given the appellant in York County commenced and ended,

other than the commencement of the first sentence on April 13, 1942, and when the sentence passed by Judge Dennis in Chesterfield County began, other than that the sentence of Judge Dennis did not begin until the completion of the service of the three sentences given the appellant in York County. However, at the time the case was orally argued in this Court, such issue was discussed, although the appellant represented himself and was without counsel. Therefore, in the interest of justice, and with the consent and aid of the Assistant Attorney General who handled this case on the part of the State, we are going to pass upon such issue, which is favorable to the appellant and he therefore cannot object thereto.

Under Section 1578 of the Code of 1942, any person serving a sentence imposed by any court of competent jurisdiction, life sentence excepted, either in the state penitentiary or any county jail, or upon the public works of any county, shall be entitled to have one fifth of such sentence deducted at the end thereof for good behavior, and in case such person has not theretofore been adjudged guilty of any crime against the laws of this State, or of any other State in this union, or of the United States, in lieu of a credit of one-fifth of such sentence he shall be entitled to have a credit of thirty per cent of such sentence deducted at the end thereof for good behavior. In the records of the State Penitentiary it appears that this appellant had a FBI record, and therefore he is entitled to only one-fifth, or twenty per cent of his sentence deducted for good behavior.

The first three sentences in York County were imposed on April 13, 1942, and so far as the record which has been furnished us from the Penitentiary reflects, the appellant was entitled to twenty per cent off of the first three-year sentence, which amounts to seven months and six days, and therefore he completed the service of his first three-year sentence on September 7, 1944. The second sentence of three years began on September 8, 1944. On January 20, 1946, appellant failed to return to the Penitentiary from a leave of

absence granted him by the then Governor, at the time he was to have returned, and he was re-arrested February 2, 1946. On December 22, 1946, he escaped from the Penitentiary and was recaptured January 14, 1947. At some time during the service of his second three-year sentence he forged the name of the bookkeeper in the Penitentiary to false papers relating to funds on deposit at the Penitentiary. All of these infractions occurred during the service of his second three-year sentence. He, therefore, lost all good time and the time he was absent from the Penitentiary on his second three-year sentence. However, on order of the Governor he was credited with working fifty-two Sundays during his three-year sentence and, according to our calculation the second sentence of three years expired on August 23, 1947. His third sentence of four years, therefore, began on August 24, 1947. So far as the third sentence of four years is concerned, there being nothing in the Penitentiary record to the contrary, he is entitled to twenty per cent off for good behavior amounting to nine months and eighteen days, and this sentence expired on November 6, 1950. On November 7, 1950, he began his ten-year sentence from Chesterfield County. Since commencing the service of this ten-year sentence, the Superintendent of the Penitentiary discovered that the good time which the appellant had earned during the first and third sentences he was serving had been wrongfully taken from him and therefore restored same to him, the total of which was one year, four months and twenty-four days to be applied on his ten-year sentence, but evidently the records of the Penitentiary show that he commenced service of this ten-year sentence the same amount of time later than as stated above, on November 7, 1950, and this time cannot be twice given the appellant. If the appellant properly conducts himself so as to earn twenty per cent off of this ten-year sentence, apparently his sentence will have been served on November 7, 1958, which of course, would be his release date.

The sole question, of course, is whether or not petitioner is entitled to his release at this time and we have computed

the time yet to be served only because of the confused state of the records in this case and such is not to be considered as a precedent in the consideration of any other case now pending or hereafter to come before this Court.

The order of Judge Eatmon, from which this appeal comes to the Court, is affirmed, and the record of this appellant in the State Penitentiary corrected to conform to this opinion.

BAKER, C. J., STUKES, TAYLOR and OXNER, JJ., and BAKER, Acting Associate Justice, concur.