Franklin BECKETT, Petitioner,

v.

Otto C. BOLES, Warden of the West Virginia State Penitentiary, Respondent.

Civ. A. No. 1213-W.

United States District Court
N. D. West Virginia,
at Wheeling.
June 25, 1963.

convictions were read to the petitioner and, without explaining the purposes of the inquiries, the petitioner was asked whether he was the same person who had sustained the convictions. On the petitioner's affirmative answers, without objection by his counsel or consultation between counsel and petitioner, the petitioner was immediately sentenced to life imprisonment.

The allegations of the petition seemed to make pertinent inquiry into whether the petitioner had received effective representation by counsel under the rules expressed in Jones v. Cunningham, 313 F.2d 347 (4 Cir. 1963) and Turner v. Maryland, 303 F.2d 507 (4 Cir. 1962), and also whether the procedure under the recidivist proceedings met the constitutional requirements spelled out in Spry v. Boles, 299 F.2d 332 (4 Cir. 1962).

The conflicting testimony at the hearing, tested by the rules governing witnesses' credibility, leads this court to the following findings of fact and conclusions:

In the early hours of the morning of October 24, 1960, a restaurant and storeroom on the outskirts of the city of Huntington, in that portion of the city which lies in Wayne County, West Virginia, was broken into. Two police detectives and a policeman of the city of Huntington surprised the petitioner and an accomplice in the premises, attempting to hide. They were in possession of burglary tools and money taken from a juke box which had been broken open. The petitioner, who was on parole from the West Virginia Penitentiary on a former conviction of a felony, was arrested and taken to the Cabell County Jail, where he was held as a parole violator. Upon questioning, the petitioner frankly admitted not only his complicity in the breaking and entering of the store in which he was found, but also other breakings and enterings in the city of Huntington, in Cabell County. The petitioner signed a statement involving a confession to the Wayne County depredation. That the confessions were

Wright Hugus, Jr., John D. Phillips, Jr., Wheeling, W. Va., for petitioner.

Thomas B. Yost, Asst. Atty. Gen., for respondent.

CHARLES F. PAUL, District Judge.

A writ of habeas corpus was issued, competent counsel were appointed for the petitioner, and a plenary hearing was scheduled and held June 3, 1963, because of the allegations of the petition, which may be summarized as follows:

On a breaking and entering indictment returned by the Wayne County Grand Jury November 21, 1960, the petitioner was removed from the Cabell County Jail to the Wayne County Jail on December 5, 1960. One, James E. Chambers, was appointed counsel for him on that day. Chambers talked with the petitioner in the jail for about ten minutes, and went with him to the courtroom, where he was arraigned before the Judge of the Circuit Court and entered a plea of not guilty. Immediately thereafter, the jury was empaneled and a witness called to testify. After a few questions and answers, the petitioner's court-appointed counsel announced to the court that the petitioner desired to withdraw his plea of not guilty and enter a plea of guilty. Petitioner was immediately asked to re-plead, and because neither he nor his counsel was prepared to proceed with trial, petitioner acquiesced and entered a plea of guilty. Thereupon, the Prosecuting Attorney filed an information charging the petitioner with three prior felony convictions, and invoked the West Virginia recidivist statute (Michie's Code, § 6130 and § 6131). The portions of the information reciting the previous

voluntarily and understandingly made, without coercion or improper inducement, is not brought into question. Later in the morning, during business hours, petitioner was granted a preliminary hearing before a Justice of the Peace and bound over to the Cabell County Grand Jury, and then taken before a Justice of Wayne County, and, after hearing, bound over to the Wayne County Grand Jury. He was returned to the Cabell County Jail, where he was held until the morning of December 5, 1960.

On November 21, 1960, the Wayne County Grand Jury returned an indictment. Upon the return of the indictment, the Circuit Judge advised the Prosecuting Attorney that he desired to appoint James E. Chambers, a lawyer practicing before both the Cabell and Wayne County courts, to represent the petitioner, and requested the Prosecuting Attorney, or his assistant, to so notify Mr. Chambers. Chambers was notified and, on a date which the testimony does not fix except that it was between the time of the return of the indictment and the end of November, Chambers conferred with the petitioner in the Cabell County Jail for at least a half hour. Beckett frankly admitted his guilt of the charge upon which the indictment was returned; admitted that he was on parole at the time of the offense; and admitted that he had been convicted of felonies on at least two occasions other than the conviction upon which he was paroled. Most of the conversation between lawyer and client concerned the danger that, if convicted of the Wayne County offense, Beckett might be sentenced for life under the recidivist statutes. Chambers despaired of finding any defense to the Wayne County indictment, and suggested to Beckett that his only hope might be to plead guilty, trusting that his cooperation with the prosecuting authorities might lead them not to press the matter of the prior convictions.

After the interview, Chambers then conferred with Detective Shy and Officer Lane, two of the arresting and investigating officers, and their stories confirmed that Beckett had been caught red-handed.

Chambers next conferred with the Prosecuting Attorney, or his assistant, and was shown Beckett's signed statement.

When Beckett was removed to the Wayne County Jail on December 5th, Chambers again conferred with him for about ten minutes; reiterated his hopelessness of the success of any attempted defense, and "grasping at straws", again expressed the hope (which turned out to be vain) that lack of resistance might be rewarded by leniency on the part of the Prosecuting Attorney's office in the matter of the former convictions. Lawyer and client agreed that their plea should be "guilty".

■■ They then went into court and Chambers advised the Judge and the Prosecuting Attorney that the plea would be "guilty". The Judge of the Circuit Court of Wayne County has a uniform practice of not accepting pleas of guilty, but of insisting that not guilty pleas be entered; that a jury be empaneled, and that one witness be partially examined, before the accused is permitted to withdraw the not guilty plea and enter the guilty plea. The explanation for this bizarre procedure, as given by the Judge, is that it is for the defendant's protection, so that the record will clearly show that the defendant has been placed in jeopardy and can never be prosecuted again for the same offense. The explanation does not appeal to reason, and the practice has the pernicious effect of giving the appearance that an accused, wanting to assert his innocence and stand trial, has been rushed into a jury trial without adequate preparation and with no real opportunity to defend himself—thus forcing his change of plea. Regardless of appearances, that is not what happened here. At no time did either Beckett or Chambers intend to stand trial as to Beckett's guilt or innocence, and, in this instance, it appears that no prejudice resulted to Beckett from this strange and dangerous practice. It is apparent that Beckett

had no defense to the charge upon which he was arraigned, and (quoting from Turner v. State of Maryland, 318 F.2d 852 (4 Cir. 1963), "In these circumstances there is no ground for saying that the legal representation afforded Turner" (read Beckett) "(w)as so inadequate as to warrant the invalidation of his conviction and sentence."

The judgment of conviction of the Circuit Court of Wayne County, West Virginia, is without constitutional infirmity.

If this court could now reach the further questions presented, involving the propriety of the proceedings upon the information invoking the recidivist statutes, more difficult problems are presented. It is clear that, as in Spry, the court did not explicitly caution Beckett regarding the nature of the proceedings and the effect of his affirmative answers to the fatal questions. The court did read the information, which detailed the prior convictions, and the West Virginia Supreme Court of Appeals, in State ex rel. Mounts v. Boles, 126 S.E.2d 393 (1962), has said that this is enough to satisfy not only the provisions of the West Virginia statute, but that it constitutes due process of law. In the habeas corpus proceedings, which is a sequel to State ex rel. Mounts v. Boles, this court granted the writ and ordered release on the authority of Spry, and the question is now before the Circuit Court of Appeals. Unlike the situation in either Mounts or Spry, the record here clearly shows that Beckett understood the nature of the proceedings and the effect of his admissions, whether explained by the court or not.

Further, on the question of the propriety of the recidivist proceedings and the sentence resulting therefrom, petitioner's counsel urge that, whatever the decision on the adequacy of the representation of Beckett on the substantive offense, Beckett received inadequate representation with reference to the recidivist information, in that his counsel made no inquiry into whether any of the previous convictions charged were in-

fected with and invalidated by constitutional infirmities. Whether counsel, confronted with the situation in which his client readily admits the fact of the former convictions and makes no complaint about the manner in which they were obtained, has a duty independently to inquire into the circumstances of the prior convictions and to ferret out possible infirmities, at the risk of having his representation be declared so clearly inadequate as to be, in effect, no representation at all, presents an interesting question. It is also questionable whether, in West Virginia, where the recidivist statutes seem to limit the issue at the trial on the information to the single question of the identity of the accused with the person who sustained the former convictions, attempts to go into the circumstances of the prior convictions are permissible. In other words, would or must West Virginia permit collateral attack, in a proceeding upon the information, upon the former convictions. The Supreme Court in Chewning v. Cunningham, 368 U.S. 443, 82 S.Ct. 498, 7 L.Ed. 2d 442 (1962), held that the mother State of Virginia does permit such collateral attack.

Interesting as these questions may be, it appears that they are prematurely raised and it is not appropriate for this court to decide these issues now. The West Virginia Supreme Court of Appeals has repeatedly held that where a life sentence under the habitual criminal statutes is invalid, the convicted person is considered to be serving a valid sentence for the maximum term which could be imposed for the substantive offense. See, e. g., State ex rel. Housden v. Adams, 143 W.Va. 601, 103 S.E.2d 873 (1958), and State ex rel. Yokum v. Adams, 145 W.Va. 450, 114 S.E.2d 892 (1960). In this case, the maximum term is 10 years. Obviously, the petitioner has not served this term, and it follows that petitioner is presently serving a valid sentence. In such case, the line of cases following McNally v. Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238 (1934) makes clear that when the

petitioner is not entitled to immediate release and is held by lawful authority, his petition for habeas corpus and release is premature and must be denied.

The court wishes to thank petitioner's counsel for their excellent representation of petitioner in this case.

Petitioner's request for release may be denied.