**UNITED STATES of America ex rel. Robert WATSON**

v.

**Edward MYERS, Supt. of Holmesburg Prison.**

**Misc. No. 3112.**

United States District Court
E. D. Pennsylvania.

Feb. 4, 1966.

James J. Phelan, Jr., Philadelphia, Pa. (Court appointed), for relator.

Arlen Specter, Dist. Atty., Philadelphia, Pa., Abner Silver, Asst. Dist. Atty., of counsel, for respondent.

JOSEPH S. LORD III, District Judge.

This is a petition for a writ of habeas corpus by a state prisoner. He was convicted in 1948 in the Pennsylvania Court of Quarter Sessions of the crimes of burglary, larceny and receiving stolen goods. He was sentenced to ten to twenty years imprisonment on one of the three bills on which he was convicted. Twice he was paroled but each time was returned to prison as a convicted parole violator. His present maximum on the 1948 conviction expires in 1970. In 1964, he was sentenced to three to eight years in prison, the sentence to begin at the expiration of the sentence on the 1948 conviction which is here under attack.

■ A preliminary question is whether this court is empowered to grant relief on habeas corpus where the relator challenges a sentence he is presently serving but has a consecutive sentence awaiting him upon the expiration of his present sentence. That question was answered affirmatively, if silently, by Palumbo v. New Jersey, 334 F.2d 524 (C.A. 3, 1964). In *Palumbo,* a prisoner was permitted to challenge successfully his present custody but not his future confinement on a consecutive sentence. See also Thomas v. Cunningham, 313 F.2d 934 (C.A. 4, 1963).

■ The relator must be in custody because of the sentence he attacks, and for the writ to be available the prisoner must be entitled to his "immediate release." McNally v. Hill, 293 U.S. 131, 138, 55 S.Ct. 24, 79 L.Ed. 238 (1934). However, in deciding that relator can challenge his sentence, though it is followed by a consecutive sentence, we do not run afoul of McNally v. Hill, supra.

If the relator obtains his writ, he will be entitled to immediate release from his present confinement. That does not mean that he will be relieved of his consecutive sentence of three to eight years. Unless retried, relator would be released from detention on the 1948 sentence, but the 1964 sentence would begin to run immediately. We turn to the merits.

■ The relator alleges that his 1948 trial was conducted in violation of his right to counsel, because of a conflict of interest among co-defendants. He has previously presented this allegation to the state courts in a petition for habeas corpus, but the contention was rejected by the Court of Common Pleas, and the denial of the writ was affirmed by the Superior Court of Pennsylvania. Commonwealth ex rel. Watson v. Myers, 206 Pa.Super. 718, 211 A.2d 880 (1965). His appeal to the Supreme Court was returned for lateness. Since relator's claim has been rejected definitively by the state courts, we are duty-bound to consider it here.

■ From the state record, which we have examined, it appears that the relator was tried together with four co-defendants. Two of the five were represented separately. Watson, Wheeler and Odom, however, were represented by one attorney. That fact alone does not constitute a denial of the effective assistance of counsel. Campbell v. United States, 352 F.2d 359, 361 (D.C.Cir. 1965). The orderly conduct of a trial involving multiple defendants and even the interests of the defendants may make their representation by one lawyer advantageous. In Watson's case, however, joint representation was clearly prejudicial. The interests of Watson and Wheeler were adverse. Each tried to exonerate himself at the expense of the other. Upon direct examination, Wheeler was asked what he knew about the burglary. He replied:

"A. All I know, I was going to my mother's house one morning and I met Watson there with a lot of clothes. And he said this boy had given them to him to pawn. So, I

went along with him. He asked me did I need money, which I didn't know the clothes were stolen until they locked me up. I went with him just to get some money. I was broke and needed some money. I didn't know whether the boy gave him the clothes or took them or what. The first thing I know, they came over to my mother's house and picked me up and said I was wanted for murder and burglary.

"Q. Did you ever participate in any of these burglaries on 18th Street or 22nd Street?

"A. No, never did." (N.T. 25).

On cross-examination, Wheeler reiterated his version that he got the clothes from Watson, did not know they were stolen and relied on Watson's representation. Id. at 26. Watson had testified shortly before, on direct examination, that a coat had been brought to his house by Wheeler. Id. at 21; see also id. at 7.

There can be no doubt that the interests of Watson and Wheeler at the trial were conflicting. The same lawyer could not represent both of them adequately or effectively. Watson's case would, for example, have required impeachment of Wheeler's testimony, but Wheeler was testifying in his own behalf on direct examination by his and Watson's joint counsel; to impeach him and represent him simultaneously would be an impossibility for any advocate. Glasser v. United States, 315 U.S. 60, 73, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

 The Sixth Amendment right to the effective assistance of counsel includes the right to a lawyer who is not obliged to serve conflicting interests at the same time. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457 (1942). Compare Commonwealth ex rel. Whitling v. Russell, 406 Pa. 45, 176 A.2d 641 (1962). The constitutional right to counsel obtains in state court proceedings. Gideon v. Wainright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733 (1963). There is no suggestion in the state trial record of a waiver of the right to separate representation, much less a knowing and intelligent waiver, see *Glasser,* supra, at 70–72, 62 S.Ct. 457; and the respondent in his answer has averred none. Indeed, the answer to the petition admits the existence of a conflict of interest and with commendable forthrightness requests that the writ of habeas corpus be granted. Therefore, with the agreement of both parties, and upon a determination from the face of the trial record that the interests of Watson conflicted with those of Wheeler and that this conflict prejudiced Watson's right to counsel and his defense, the writ of habeas corpus will be granted.