**Paul M. GILLESPIE, Petitioner,**

v.

**C. C. PEYTON, Superintendent of Virginia State Penitentiary, Respondent.**

**Civ. A. No. 67–C–4–H.**

United States District Court
W. D. Virginia,
Harrisonburg Division.
March 31, 1967.

Reno S. Harp, III, Asst. Atty. Gen., Richmond, Va., for defendant.

No appearance for plaintiff.

## OPINION AND JUDGMENT

DALTON, Chief Judge.

This matter comes to this court upon a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241, by Paul M. Gillespie, a state prisoner, and is filed *in forma pauperis*.

In 1964 the petitioner, in two separate state trials, was found guilty of two un-related felonies. In the first one on August 25, 1964, he was found guilty of malicious wounding in the Augusta County Circuit Court, Augusta County, and was sentenced to twenty years. He is presently serving the remainder of that sentence in the Virginia State Penitentiary. His second conviction came on December 14, 1964, when he was found guilty of first degree murder and sentenced to life imprisonment by the Circuit Court for the City of Staunton, Staunton, Virginia.

It is necessary to note at the outset that petitioner is attacking, via this petition, his life sentence for murder. The unrelated sentence for malicious wounding is not in contention.

We find the pertinent historical facts of this case to be as follows: On February 20, 1963, Miss Virginia Parkins was found murdered and raped in Staunton, Virginia. On September 7, 1963, one Anna P. Dutton was assaulted in Augusta County, Virginia. Then on September 16, 1963, petitioner was arrested in Richlands, Virginia, in connection with the assault of September 7, 1963. He was then taken to the Augusta County jail in Staunton after being questioned in Richlands, Virginia, where he was advised of his right to remain silent. He made, in Richlands, a statement which led the officers to suspect his connection with the February 20, 1963 murder. On September 20, 1963, petitioner was taken to the Parkins home in Staunton where the murder took place. Then on September 27, 1963, he confessed to the murder of Miss Parkins. In October, 1963, after a lawyer was appointed for him, petitioner was committed to a state mental hospital for observation and was found mentally competent to stand trial. The preliminary hearing was held in January, 1964, and petitioner was indicted on February 18, 1964, for murder. Prior to this time, the petitioner had retained private counsel and the court appointed counsel had been allowed to withdraw from the case. His retained attorney filed an application in the Supreme Court of Appeals for a writ of habeas corpus and the case was continued on

January 23, 1964, pending action on the petition by the Virginia high court. Subsequently on June 11, 1964, the writ was denied. In his first trial, on July 7, 1964, petitioner was found guilty in Augusta County of malicious wounding and was sentenced on August 25, 1964. The murder trial then took place from September 30 to October 2, 1964. The life sentence was imposed on December 14, 1964, after the court had been given a pre-sentence report. From this judgment an appeal was taken to the Supreme Court of Appeals which refused to grant a writ of error on October 14, 1965. From this denial the petitioner filed a petition for a writ of certiorari with the United States Supreme Court. This was denied on June 20, 1966 and a petition for a rehearing was denied on October 10, 1966. The petitioner now comes to this court alleging the same grounds for relief that he alleged in his petition for a writ of error to the Supreme Court of Appeals. In order to comply with the exhaustion of state remedies doctrine, it is not necessary for a petitioner to utilize state habeas corpus if he has once presented, and received a ruling upon, his allegations in a previous proceeding in the state's highest court. Therefore, since all the present allegations have once been ruled on by the Supreme Court of Appeals, petitioner has exhausted his available state remedies in compliance with 28 U.S.C. § 2254 as interpreted by Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

The fact that the United States Supreme Court refused to grant the petitioner a writ of certiorari is of no significance to us. The Supreme Court said in Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953) that its denial of certiorari to review a decision of a state supreme court which affirmed a criminal conviction of a lower state court should be given no weight by a federal district court in passing upon the same petitioner's application for a writ of habeas corpus.

However, before we can examine the merits of petitioner's contentions we must face the problem of whether we can properly entertain a habeas corpus petition from this particular petitioner. The problem has to do with the intermixed questions of what relief is available to the petitioner and whether petitioner is attacking the sentence he is now serving. According to the director of the Bureau of Records and Criminal Identification in Richmond, petitioner is presently serving a twenty year sentence for malicious wounding which was imposed in Augusta County Circuit Court on August 25, 1964, and which is entirely independent of the conviction which is under attack in the present petition. Thus the first part of the problem is whether there is any relief which we could give to the petitioner if we ruled in his favor. If not, then, the petition would raise a moot question. It is generally understood that "Habeas corpus is available only when a ruling in the petitioner's favor will result in his immediate release or will cause the restraints on his liberty to cease."[1] And as the Supreme Court said in McNally v. Hill, 293 U.S. 131, 136–137, 55 S.Ct. 24, 26 79 L.Ed. 238 (1934):

> the only judicial relief authorized * * * [in a habeas corpus proceeding is] the discharge of the prisoner or his admission to bail, and that only if his detention were found to be unlawful.

It is obvious that a ruling in petitioner's favor on the present petition which challenges his murder conviction could not result in his immediate release or cause the present restraints on his liberty to cease because he would continue to serve the sentence for malicious wounding. Therefore we believe the petition should not be entertained because there is no relief available to petitioner on the murder conviction while he serves another previously rendered sentence.

1. Sokol, R. P., Federal Habeas Corpus, p. 30 (1965).

■ The second part of the problem is whether the petitioner has standing to attack, by habeas corpus, a sentence which he is not yet serving. As stated above, the director's record indicates that petitioner is presently serving the malicious wounding sentence. Thus the implication would be that he has yet to begin serving the sentence for murder. And "A sentence which the prisoner has not begun to serve cannot be the cause of restraint which the [federal habeas corpus] statute makes the subject of inquiry." McNally v. Hill, supra, p. 138, 55 S.Ct. p. 27.

Although the judgment order of the Staunton City Corporation Court makes no mention of when service of the life sentence is to begin, it would appear to us that it was the intent of the trial court that the sentence begin to be served after completion of the twenty-year sentence. If this is true, this petition for a writ of habeas corpus is faulty, not only because relief is unavailable in this court, but it is also premature in that it attacks a sentence which petitioner has not begun to serve.

But notwithstanding the above considerations, and in the alternative, we now undertake to consider the merits of the petitioner's allegations. We do this in order to give the petitioner a decision on his petition while the witnesses are still available, should they be needed, and while the record is still "warm".

We find that, upon examining the record, it will not be necessary to conduct a plenary hearing because the record leaves no controlling points in question.

The petitioner makes the following allegations:

(1) that he was denied the assistance of counsel during the period of interrogation prior to the confession;

(2) that his conviction was based primarily on a confession that was inadmissible because it was involuntary.

■ As to the first allegation, we note that the murder trial of petitioner took place from September 30, 1964, through October 2, 1964. Therefore the petitioner is entitled to have his confession measured by the standards laid down in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) because as was announced in Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

* * * Escobedo is to be applied prospectively * * * [and] is available only to persons whose trials began after June 22, 1964, the date on which Escobedo was decided.

The same decision goes on to say that Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) is available only to persons whose trials began after June 13, 1966. Thus the Escobedo decision is the only one of the Escobedo-Miranda pair which is available to the petitioner. The Escobedo decision says, at pages 490–491, that the accused is denied assistance of counsel and any statements he gives are therefore inadmissible.

[where] the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent * * *.

The record shows that the investigation had definitely focused on the petitioner and it was no longer a general inquiry into an unsolved crime. But the record shows further in unrebutted evidence, that before the petitioner gave his confession he was advised of his absolute constitutional right to remain silent. Additionally, when he requested the right to consult with an attorney, the questioning was stopped and a lawyer was called. In fact the record shows that this lawyer advised him that he had the absolute right to remain silent.

The fact that this lawyer was running for the office of Commonwealth's attorney and had prosecuted cases for the state in the past does not overcome the fact that the lawyer, when asked by the petitioner about the fee for representation, told him of his status and explained that because of his status he could not represent petitioner. He did, however, go on and advise petitioner of his right to remain silent. In light of these facts, petitioner chose to proceed several minutes later and give a confession. This, we hold, amounts to a clear waiver of any further right to consult with an attorney. Thus there is no merit in petitioner's first allegation.

■ Next, petitioner alleges that his conviction was based on a confession which was involuntary because the petitioner was kept in a cell by himself, deprived of all reading material, not allowed visiting privileges in accordance with the regular visitation schedule and was not allowed day room privileges.

The record shows that the petitioner was given sympathetic care while in the Augusta County jail. He was asked if he wanted to move into a cell block where there were other prisoners but he preferred to remain alone. He was not held *incommunicado* because the record shows that he had visitors. This fact overrides the fact that their visiting hours might have differed from the regular visiting hours from time to time. The record also shows that he was given reading material. In short, a reading of the lengthy record leaves us with the judgment that this petitioner gave a voluntary confession and that none of the alleged irregularities made it involuntary. Thus he is entitled to no relief on this second allegation.

It is therefore adjudged and ordered that the petition be dismissed and the writ denied.

The Clerk of this Court will send a copy of this opinion and judgment to counsel for the petitioner and to the respondent.